## No. 2315.

EAST LINE & RED RIVER RAILWAY COMPANY *v.* J. S. RUSHING.

1. PLEADING.—It is not necessary to set out in pleading a printed act of the Legislature, but it is sufficient to recite the title thereo₁ and the date of its approval and to set forth in substance so much o₁ the act as may be pertinent to the cause of action or defense. The object of this rule is to relieve the pleader from the necessity of setting forth either the act or

any of its provisions in full, and to give him, his adversary and the court as fully the benefit of the full contents of the act as if it formed a part of the pleading. Hence, on demurrer when an act is thus referred to, the court may look to its contents.

**2.** RAILWAYS.—The fifth section of the act of 1871, incorporating the East Line Railway Company provides, among other things, as follows: "Said company is authorized, and the right is hereby granted them, to cross or connect with any other railway company, to join stocks or consolidate with any other railway company running in the same general direction;" and by the fourth section of the amendatory act of 1873 it is provided that "said company shall not have the right to rent, sell, lease or consolidate with, any parallel or competing railroad in this State." By the fourth section of an act of August 7, 1870, it was provided that the Missouri, Kansas & Texas Railway Company should have the right to purchase, sell or lease, join stocks, unite or consolidate with, any connecting railroad company, by and with the approval and consent of a majority in interest of the stockholders in each company, and to acquire and merge into itself all, or any part of the property, rights and privileges of such other company, upon such terms and conditions as may be agreed upon by their respective boards of directors." In a suit against the East Line & Red River Railway Company to recover damages for injuries sustained by its negligence, it sought to avoid liability by setting up that the road had been sold to the Missouri, Kansas & Texas Railway Company, *held:*

(1) In order to render a sale effective, there must be both a power to sell in the vendor, and a power to purchase in the vendee.

(2) If the roads were parallel or competing lines the appellant had no right to sell.

(3) The fact that roads cross each other does not necessarily establish the fact that they are competing lines; whether they are or not is a matter of fact to be found by a jury.

(4) The claim of the Missouri, Kansas & Texas Railway to purchase the property and franchises of another road is the assertion of a right not accorded to railways generally, either by statute or common law, and can only be recognized upon allegations and proof bringing it clearly within the terms of t e statute.

(5) No railway can absolve itself from liability to the public for torts, by transferring s franch ses to another road, in the absence of a statue conferring the right.

(6) The State violated no constract with the Missouri, Kansas & Texas Railway Company, and divested none of its rig ts, by forbidding another road to consolidate with it, if it was a competing line.

(7) Nothing passes by implication under a public grant, and the grant to the Missouri, Kansas & Texas Railway Company can not be so construed as to curtail the powers of the State to impose restrictions in charters to be granted afterwards.

(8) The East Line & Red River Railway Company can not, while violating the provisions of its charter, prohibiting it from selling to a competing line, set up the rights of a competing line to purchase, and thus avoid liability for its torts.

3. NEGLIGENCE —The care which a railway company must exercise in regard to the safety of those who travel on their trains is not limited to such action as would not inflict injury by their negligence on persons of robust health and of ordinary physical ability; persons in feeble health, old and decrepit, are entitled to travel on their trains, and they must exercise care accordingly.

4. NEGLIGENCE.—It is negligence for which a passenger may recover damages, for the employes of a railway company to bring a switch engine in such violent contact with its passenger car at a depot as to injure him, if he had not been allowed a reasonable time to leave the car after the train stopped, notice having been previously given that the passengers change cars.

APPEAL from Hopkins. Tried below before the Hon. J. A. B. Putman.

Suit against appellant, alleging that on March 2, 1886, plaintiff was a passenger on appellant's cars between McKinney and Greenville, that when the train arrived at Greenville the passengers were informed "that the train stopped at Greenville twenty minutes for breakfast, and that they must all change cars, as that car went no further; that as soon as the train stopped, the brakeman locked one door of the car, so all the passengers were compelled to leave the car at one door, and while they were leaving, and before appellee and others had an opportunity or time to alight, the employes of appellant violently ran a switch engine against the car, with sufficient force to knock appellee and other passengers off their feet; that by such collision, appellee, who was standing between two seats, which were close together, as the car was narrow gauge, was thrown down, with his feet under one seat and his body over the back of another, whereby his hip was dislocated, his knee severely contused, his ankle and foot mashed, which injuries have been permanent, entirely disabling him from performing manual labor, and as appellee was uneducated, his only means of support was by manual labor." The petition further alleged that the cars were run and operated by the Missouri Pacific Railway under some agreement unknown to appellee, over the track, road bed, right of way, and franchise of appellant.

Appellant, by amendment filed the day of trial, set up three defenses:

1. General denial.

2. That the agents and employes of appellant used proper care in managing their cars, and appellee had ample time to

alight from the train; that in fact appellee was laboring under serious disability, of which appellant had no notice.

3.   That appellant was not liable, because it was not operating the road, and did not contract to carry appellee as a passenger, and the persons managing the train and switch engine were not employes of appellant, because in 1881 appellant transferred or merged all its property to the Missouri, Kansas & Texas Railway, a Kansas corporation with authority to exist in Texas by virtue of a special law passed August 7, 1870, entitled "An act in relation to the Missouri, Kansas & Texas Railway Company, late Union Pacific Railway Company, Southern branch," which act authorized it to make such agreement; that appellant entered into the agreement by virtue of its charter, setting out the captions of the special laws, the first passed March 22, 1871, amended May 17, 1873, and again March 6, 1875; also of the railroad extension acts, which laws, appellant says, gave it the right to make such transfer or merger, and by virtue thereof appellant ceased to exercise any control over the road, wherefore it was not liable.

The court sustained a demurrer to that portion of the answer setting up sale of the road.   Verdict for plaintiff for five thousand dollars damages.

*Whitaker & Bonner*, for appellant:   The court erred in sustaining plaintiff's third special exception to that part of defendant's answer which sets up a sale or transfer of its railway to the Missouri, Kansas & Texas Railway Company, because such sale, transfer or consolidation of defendant company would relieve defendant of liability and constitute a good defense to plaintiff's cause of action.   The sale or transfer of a railroad under due authority of law effects a transfer of rights and liabilities in its management, so that the corporation owning the railway is discharged from responsibility for the purchaser's torts, citing Missouri Pacific Railway Company v. Watts, 63 Texas, 549; Railroad Company v. Fryer, 56 Texas, 609; International & Great Northern Railway Company v. Underwood, (Austin term, 1887); Pierce on Railroads, page 283, and note 6.

A carrier is only bound to exercise such degree of care as is necessary to safely transport persons enjoying ordinary physical ability, unless advised that extra care is required towards some who may be deprived of such ability.

When, at the termination of his journey, a reasonable oppor-

---

---

tunity has been afforded a passenger to alight from the car, it is his duty to do so, and the relation of passenger and carrier is thereby terminated, and for an injury afterwards received by the ordinary negligence of the carrier the person would not be entitled to recover. Nor would such liability exist even though the relation of passenger and carrier still existed, if in the usual prosecution of its business, and with due and proper care, an injury nevertheless results to a passenger.

*E. W. Terhune* and *R. L. Porter,* for appellee: No railroad company chartered under the laws of Texas can consolidate with or merge into any railroad company that is a competing line, or that is chartered under the laws of any other State. (Constitution, sections 5, 6, article 10.)

Any railroad company in existence when the Constitution of 1876 was adopted, by accepting protection subsequently, under the laws of the State, obligated itself, if it had a vested right to consolidate with competing lines or foreign corporations, not to do so; and unless such road had at that time a vested right to consolidate, superior to the right of the law to control it, such consolidation is in violation of the Constitution. (Constitution, section 8, article 10.)

The law making body created the East Line railroad and gave to the Missouri, Kansas & Texas all the rights it had in this State, and did not vest in them any right it can not control, and the right given them by implication in their charter to sell or consolidate is not such a vested right to do that act but that the Legislature or convention of the people can legally prevent such consolidation if the preventive act is passed before such consolidation and sale is made. (Tiedeman on Lim. of Police Power, sections 182, 194; Constitution 1869, art. 1, section 18; idem, art. 12, section 17; 2 Paschal's Digest of Laws, article 6011; Bass v. Fontleroy, 11 Texas, 703; Buffalo Bayou, Brazos & Colorado Railway v. Ferris, 26 Texas, 599; State v. Southern Pacific Railway, 24 Texas, 128; Acres v. Moyne, 59 Texas, 623.)

A railroad company can not transfer its line to another so as to defeat its liability for the torts of the operating company to a passenger without showing in its plea affirmatively that the transfer was by authority of law, and the burden of showing such authority is on the company, and every presumption is against the plea and the existence of the authority. (Inter-

national & Great Northern Railway **v.** Underwood, 4 Southwestern Reporter, 216.)

The mere fact that appellee was injured while a passenget on appellant's cars, when the injury was occasioned by the act of the carrier or its servants, raises the presumption of negligence, and the burden of disproving it is on the carrier; hence the charge is not error. (Stokes v. Saltonstall, 13 Peters, 181; Curtis v. Rochester & Syracuse Railway, 18 New York, 534; George v. St. Louis, Iron Mountain & Southern Railway, 34 Arkansas, 613, in 1 American and English Railroad Cases, 204; Iron Railway v. Mowery, 36 Ohio State, 418, in 3 American and English Railroad Cases, 316; O. & M. P. Co. v. McCool, Indiana, 1882, in 8 American and English Railroad Cases, 390; Smith v. St. Paul Central Railway, Minnesota, 1884, in 16 American and English Railroad Cases, 310.)

WILLIE, CHIEF JUSTICE. This was a suit by Rushing against the appellant in which damages were claimed for injuries received by the plaintiff whilst a passenger on the defendant's train. The defendant pleaded a general denial of the allegations of the petition; that the plaintiff's negligence contributed towards producing the injuries; and further, that it had sold and transferred its railroad and equipments to the Missouri, Kansas and Texas Railway Company, by due authority of law, in 1881; and that at the time plaintiff was injured it was not operating the road, nor was it in any way responsible for its control and management. To this last plea a demurrer was sustained by the court below, and that part of the answer was stricken out. The trial of the cause before a jury resulted in a verdict for the plaintiff for five thousand dollars, and from the judgment rendered therein this appeal is taken.

The first error assigned is to the ruling of the court sustaining the plaintiff's exception to the defendant's special answer setting up the sale and transfer of its road to the Missouri, Kansas & Texas Railway Company. The answer alleges that the sale was made by virtue of certain acts of the Legislature, which are not set out in full, but are pleaded by their title and dates of approval; and the further averment is made that these acts authorized the sale and transfer to be made. Our statute provides that when any pleading is founded wholly or in part upon any private act, it shall not be necessary to set it out, but it shall be sufficient to recite the title thereof, and the date of its

approval, and to allege in substance so much of said act as may be pertinent to the cause of action or defense. (Rev. Stats., art. 1191.) Admitting that an allegation that an act authorized a railroad company to sell and transfer its road is an averment of the substance of that part of the law which gives the authority; we think that such an allegation places before the court the entire act, so far as it relates to the authority claimed, and the court may examine it to see whether its provisions in this respect are properly stated. The object of the statute is to relieve the pleader from the necessity of setting forth the act or any of its provisions in full, and to give him, his adversary, and the court the same benefit of these provisions as if they formed a part of his pleading. Hence, upon a demurrer to the answer the court may look at the act, and see if the substance of the provision relied on is properly alleged.

The defendant asserted that certain acts of the Legislature authorized it to sell its road and equipments to the Missouri, Kansas & Texas Railway Company. The particular sections of the acts in which the authority was to be found were not pointed out, but the entire acts were submitted to the inspection of the court, and it was alleged that they contained the grant of power relied on. Statutes of which judicial notice could not otherwise have been taken were thus brought to the actual knowledge of the court; and they could be taken into consideration in passing upon the question as to whether the answer had properly construed them.

The fifth section of the act of 1871 pleaded by the appellant, provides in its last cause as follows: "Said company is authorized, and the right is hereby granted them, to cross or connect with any other railway, to join stocks or consolidate with any other railway company running in the same general direction." The fourth section of the amendatory act of 1873 contains this provision: " That said company shall not have the right to rent, sell, lease or consolidate with any parallel or competing railroad in this State."

The fourth section of the act of August 2, 1870, in relation to the Missouri, Kansas & Texas Railway Company reads as follows: " That the said company should have the right to purchase, sell, lease, join stocks, unite or consolidate with any connecting railroad company, by and with the approval and con_sent of a majority in interest of the stockholders in such company, and to acquire and merge into itself all or any part of the

property, rights and privileges and franchises of such other companies, upon such terms and conditions as may be agreed upon by their respective boards of directors."

All of these acts were pleaded by the company; and if it was empowered to sell, and the Missouri, Kansas & Texas Railway Company to buy its road and operate the same, so as to release the appellants from responsibility for the wrongs complained of in this action, the power must be found in the sections we have recited. The power granted the Missouri, Kansas & Texas Railway Company to purchase is restricted in one respect only: the property, franchises, etc., purchased must belong to some company whose line connected with its own. But in the case of the East Line & Red River Company, further restrictions are imposed as to sale and consolidation. This company must not consolidate with or sell to any other company except such as has a line of road running in the same general direction nor to a parallel or competing railroad. In order to render a contract of sale effective, there must be both a power to sell in the vendor, and a power to purchase in the vendee. If, therefore, the lines of these two roads did not connect, the sale was unauthorized because the purchasing company had no right to buy; and if they were parallel or competing lines, it was unauthorized because the appellant company had no right to sell. It may be that this court, judicially knowing the geography of the State, might take notice from the general direction of these two roads as fixed by the statutes under consideration, that their lines must necessarily cross each other, and could therefore treat them as connecting lines, and not parallel to each other. But as to whether they were competing lines, we could have no judicial knowledge whatever. Competition between railroads may exist and yet their lines not run parallel but cross each other at some point in their route. Hence when a question as to such competition is raised, the court or jury must have proof upon the subject, as in case of any other fact submitted for its consideration. The appellant claimed a right to which it was not entitled by the general law of the State. It claimed a privilege not accorded to railroad companies generally, either by common law or statute. It claimed this under a private act passed for its special benefit. It was its duty therefore to bring itself clearly within the purview of the act, to show that the circumstances under which the right to sell its franchise and property could be claimed actually existed at the time of the sale;

that the road to which it was sold was a connecting, but not a parallel or competing line.

There was no allegation in the answer that the Missouri, Kansas & Texas Railway was not a competing line, and as the court could not judicially know that such was the case, the answer was fatally defective. It did not make out a state of case in which the defendant company could sell out to another. Without due statutory authority a railroad company can not transfer the right to operate its road so as to absolve itself from its duties to the public, or its liability to the torts of the company by whom the road is operated. (I. & G. N. R. R. Co. v. Underwood, 4 S. W. Rep., 216; Ry. Co. v. Morris, 3 S. W. Rep., 457.)

The State violated no contract previously made with the Missouri, Kansas & Texas Railway Company, nor did it interfere with any right vested in that corporation by forbidding the appellant to consolidate with it if it was a competing line. No such right existed at the time the act for the benefit of the Missouri, Kansas & Texas Railway Company was passed; and no contract authorizing the consolidation was then made in reference to the defendant company; for at that time the latter was not in existence. Public grants must be strictly construed. Nothing passes to the grantee by implication. We must not construe a grant of this character so as to tie up the hands of the State and forbid it from imposing restrictions upon private corporations to be chartered in the future. Such restrictions are prescribed for the good of the whole community, and the State must not be held to have abdicated for the benefit of a single corporation the power to impose them for the future, when there is no special provision to that effect, if indeed this can be done at all. (Charles River Bridge v. Warren Bridge, 11 Pet., 420.)

The charter of the East Line & Red River Railroad Company, as amended, provided that it should not sell out to a competing line. This it contracted not to do. Upon what principle then can it plead that it was released from this obligation on its part and hold the State to those which it assumed? Certainly not for the reason that the rights of another company will be thereby violated. The State did not contract with the appellant that it would not interfere with the rights of others but only with those of the appellant. The State has not impaired the contract with the appellant, and it had not the right to break its contract, and hence could not sell out to another company unless the railroad

of the latter was not in competition with that of the appellant. Besides the act in relation to the Missouri, Kansas & Texas Railway Company required that, in order that it might purchase other roads, a majority of its stockholders and those of the company selling out to them, should agree to the sale. The stockholders of the appellant company could not agree to sell to the Missouri, Kansas & Texas Railway Company, if its line competed with that of appellant, as this was forbidden by statute, and their agreement was *ultra vires* and void.

The first assignment is not well taken. The second complains of the following charge given below: "If the jury believe, from the evidence, that plaintiff was at the time alleged in the petition a passenger on defendant's train from McKinney to Greenville, and that when said train arrived at Greenville and stopped, plaintiff, without any unavoidable delay, was in the act of leaving the passenger car, and before a reasonable time had been afforded him to do so, the defendant's servants and employes ran a switch engine against the car in which plaintiff then was, with such force and violence as to throw plaintiff down and inflict upon him personal injuries, then the jury should find for the plaintiff," etc. It was in proof that the appellee, some time before receiving the injuries on account of which this suit was brought, had been hurt by a fall which occurred whilst he was in the employ of parties who had a construction contract under the Gulf, Colorado & Santa Fe Railway Company, and that he had been sent to a hospital in Galveston for treatment. After remaining there several weeks he left for Greenville, in Hunt county, and was getting off the train of appellant at that place when his injuries occurred. The injury was caused by the running of a switch engine against the car from which the appelle was attempting to alight, which caused him to be thrown across the seats of the car, thereby severely injuring his hip and other parts of his body. The objection to the charge is, that the appellant's liability was made to depend upon whether the force of the engine was sufficient to throw the plaintiff down, and not whether it was sufficient to throw down a person of ordinary physical abilities. The charge as given is correct in law. A railroad company owes a duty to others besides persons of ordinary physical ability. They are presumed to know that persons in feeble health, old or decrepit, travel upon their trains, and they must exercise care accordingly. The charge being correct law as a general proposition,

if the appellant wished it to be framed with special reference to the supposed enfeebled condition of the appellee, it should have asked a charge of the court adapted to its view of the case. It may be added, however, that there is little or nothing in the evidence to show that the plaintiff could have withstood the shock if he had been in good physical condition, for others not shown to have been unsound were thrown down by the violence of the concussion. We think the assignment not well taken.

The following portion of the charge is also complained of: "Or if the defendant's servants and employes were not guilty of any negligence in running the switch engine against the car in which plaintiff was; that is, if the plaintiff had been allowed a reasonably sufficient length of time, under the circumstances, to leave and alight from said car, before the switch engine approached it, and if said switch engine was brought into contact with said car with only such degree of force as was necessary to make the coupling thereto, then the plaintiff would not be entitled to recover," because it required the defendant to show not only that the plaintiff had been an unreasonable length of time in leaving the train, but also that the switch engine was driven against it with more force than was necessary in order to make a coupling. The clause of the charge objected to is only a portion of the fourth instruction given to the jury. The whole of this instruction must be taken in connection in order to arrive fully at the meaning of the court. In another portion of it the judge told the jury in effect that they must believe that the collision occurred before the plaintiff had been allowed a reasonable time to leave the train in order to find a verdict in his favor. This, taken in connection with the clause complained of, could not possibly have led the jury into the belief that the plaintiff could recover if a reasonable time to alight from the train had been allowed him, though unnecessary force had been used in making the coupling. If the plaintiff could recover only in the event that the collision occurred before he had reasonable time to alight, he could not recover, if such reasonable time had been allowed, no matter how unnecessary the force that produced the collision. Beside, the clause objected to states what is correct in law, and if the appellant wished the language changed or qualified, it should have asked an appropriate special charge, which was not done.

The following portion of the charge is also assigned as error: "Or, if the defendant's servants and employes were guilty of

negligence upon the occasion in question, which (contributed) directly to the injuries complained of, yet, if the plaintiff might in the exercise of ordinary care and caution, have seen the danger and avoided it, and his omission to do so directly contributed to the injuries, then plaintiff was guilty of such contributory negligence as will prevent a recovery in this suit, unless the plaintiff's injuries were caused by the wantonly reckless acts of defendant's servants; or, unless the plaintiff was only guilty of slight negligence, and the defendant's servants were guilty of gross negligence."

It is not complained that this charge is not good law but that the facts did not warrant its being given, there being no proof that the defendant's servants or employes were guilty of wanton recklessness or gross negligence.    The plaintiff's evidence showed that the train had stopped for breakfast allowing twenty minutes for the meal, and that the passengers, including the appellee, commenced immediately to leave the car upon which he was riding.    That he went to the back door of the car, and found it locked, and then towards the front door, and was delayed in getting there by the narrowness of the space between the two tiers of seats, which did not admit of his passing by a lady and her children who were ahead of him.    Although every reasonable effort seemed to have been made by these passengers to get off the train in proper time, yet they were left to take care of themselves by the conductor, who had gone off, thinking that every passenger had got off the train.    The brakeman, whose duty it was to watch the switch engine, saw it coming, but did nothing to notify those in charge of it that the collision might injure passengers in the act of alighting from the car.    It was certainly an act of carelessness on the part of the conductor to leave his train before the passengers had reasonable time to get off the cars, when he knew that a switch engine was to be coupled to it, without giving them any notice of the danger to which they might be subjected.    It was gross neglect on the part of the brakeman to allow the engine to be run against the train with such violence as would endanger the safety of the passengers, when it was in his power and part of his duty to prevent the occurrence.    These careless acts of the conductor and brakeman without reference to other facts that might be mentioned, justified the court in submitting the question of gross negligence to the jury.

It is finally objected that the court gave this charge to the jury:

"If the jury find that plaintiff had been injured in November, 1885, and remained until February, 1886, in the hospital in Galveston, and left the hospital at that time, and at the time his knee was so far recovered it would have gotten well, and that he was afterwards, in March, 1886, injured by the negligence of appellant, if the jury believe that at that time the plaintiff had so far recovered from his prior injury that, with ordinary care, it would have gotten well, or that it was well, and that, without fault on the part of plaintiff, it was hurt by the negligence of defendant so as to render it stiff and permanently so, then defendant would be liable for the injury so occurring."

It is objected that this charge assumes as a fact that, prior to his injury at Greenville, the appellee had been injured only in the knee; whereas he had been injured in the hip also. The court had already charged that if plaintiff's injuries were received prior to his becoming a passenger on defendant's train, they must find for defendant. This would include hip injuries as well as others. Besides, there was no proof in the record that the plaintiff's hip had been injured before he took passage on appellant's train. The doctors who treated him at Galveston say that he was injured only in the right ankle and left knee. Appellee says himself that he was injured only in those parts, and that he was well before he left the hospital. Doctor Gilbert, physician for appellant, examined the appellee a year after he received the injuries for which suit was brought. He thought the injury to the knee might have affected the hip. We can not say that the court was bound to give any weight to the opinion of a physician who had not seen the plaintiff when suffering from his former wounds, to the effect that there was a bare possibility that his hip might have been involved in the injuries, when positive proof, from those who had every opportunity of knowing, showed conclusively that no such effect had been produced.

We see no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered December 9, 1887.