ALTGELT v. GUTZEIT et al. (No. 5720.) *

(Court of Civil Appeals of Texas. San Antonio. April 26, 1916. Rehearing Denied May 31, 1916.)

1. EVIDENCE ⬥⟶30—JUDICIAL NOTICE—SPECIAL LAW.

The court cannot take judicial notice of a special law not made a public act by its own provisions.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 38; Dec. Dig. ⬥⟶30.]

2. APPEAL AND ERROR ⬥⟶518(1)—RECORD—LEGISLATIVE ACT.

Where both parties pleaded a special law by giving its title and the date of its approval, as authorized by Rev. St. 1911, art. 1823, and the entire act was before the court as if it had been copied in full in the pleadings of each party, it must be considered a part of the record on appeal, although not copied into the statement of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2342, 2343, 2351, 2353, 2354; Dec. Dig. ⬥⟶518(1).]

3. STATUTES ⬥⟶97(1)—GENERAL OR SPECIAL ACT—CONSTITUTIONAL PROVISIONS—REPEAL.

Const. art. 3, § 56, providing that the Legislature shall not, except as otherwise provided in the Constitution, pass any local or special law regulating the affairs of counties, etc., or authorizing the maintenance of roads, highways, etc., was annulled as to roads, highways, etc., by the amendment to article 8, § 9, authorizing the Legislature to pass local laws for the maintenance of public roads and highways without the local notice required for special or local laws.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 108; Dec. Dig. ⬥⟶97(1).]

4. STATUTES ⬥⟶67 — SPECIAL OR GENERAL LAW—CONSTITUTIONAL PROVISIONS.

If the authority to legislate by special act upon a certain subject is given by constitutional provision other than article 3, § 56, forbidding special acts regulating certain matters, such authority carries with it the right to enact all provisions which would be legitimately embraced in the bill, if section 56 was not a part of the Constitution.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 69; Dec. Dig. ⬥⟶67.]

5. STATUTES ⬥⟶97(1)—LOCAL ACTS—ROADS—CONSTITUTIONAL AND STATUTORY PROVISIONS.

The express authority of the Legislature under the amendment to Const. art. 8, § 9, to pass local laws for the maintenance of public roads and highways carries with it the right to regulate the affairs of the county in all such matters as may be appropriately connected with

or subsidiary to the object of creating an efficient road system, notwithstanding it incidentally regulates the affairs of the county.

[Ed. Note.—For other cases, see Statutes. Cent. Dig. § 108; Dec. Dig. ⬥⟶97(1).]

6. STATUTES ⬥⟶125(6)—SUBJECT AND TITLE—COUNTY ROAD LAW.

Const. art. 3, § 35, provides that no bill shall contain more than one subject, and article 3, § 56, forbids the Legislature to pass any local or special law regulating the affairs of counties or authorizing the laying out or maintenance of roads, highways, etc. Vernon's Sayles' Ann. Civ. St. 1914, art. 3870, provides that each county commissioner shall receive from the county treasury on order of the commissioners' court $3 for each day he is engaged in holding a term of the commissioners' court. Article 6901 constitutes the county commissioners of the several counties supervisors of public roads, each commissioner to supervise the roads in his precinct and to receive $3 a day for the time actually so employed, payable out of the county's road and bridge fund. Articles 2274, 2275, fix the terms and sessions of the commissioners' court. Sp. Acts 33d Leg. c. 77, known as the "Bexar County Road Law," by section 3 abolished the office of ex officio road commissioner, by section 6 prescribed the meetings of the commissioners' court, by section 7 made failure to attend the meetings ground for removal, by section 14 authorized the court to employ clerical assistance, by section 27 declared its provisions to be cumulative of all general and special laws on the subject-matter, and by section 5 required each precinct county commissioner to supervise the roads in his precinct, to perform all the acts required by the court and fixed the salary of $2,400 per annum in lieu of all other fees and per diem allowance there payable or thereafter payable under general law. *Held*, that the Legislature intended to fix a salary to cover all the duties prescribed by the law, whether of roads or not and that such provision did not relate to a subject so disconnected from and independent of the subject of providing a system for laying out roads as to be constitutional because embracing two subjects.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 190; Dec. Dig. ⬥⟶125(6).]

7. STATUTES ⬥⟶108—SUBJECT AND TITLE—CONSTITUTIONAL PROVISIONS — CONSTRUCTION.

Const. art. 3, § 35, providing that no bill shall contain more than one subject, must be construed liberally rather than to embarrass legislation by strict construction unnecessary to the accomplishment of its object, and no provisions will be held unconstitutional when they relate directly or indirectly to a subject having a natural connection, and are not foreign to the subject expressed in the title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 135; Dec. Dig. ⬥⟶108.]

8. CONSTITUTIONAL LAW ⬥⟶48 — CONSTRUCTION OF STATUTES—CONSTITUTIONALITY.

Where the court has a serious doubt whether the Legislature exceeded its power by embracing more than one subject in a bill, such doubt must be resolved in favor of the validity of the law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. ⬥⟶48; Statutes, Cent. Dig. § 56.]

9. CONSTITUTIONAL LAW ⬥⟶70(3)—VALIDITY OF STATUTE—PROVINCE OF COURT.

It is not the province of the court to declare a law invalid because it is unwise or unjust, or because opposed to public policy or the spirit of the Constitution, but it must violate some express provision of the Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 131; Dec. Dig. ⬥⟶70(3).]

---

⬥⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Action for injunction by George C. Altgelt against Chas. X. Gutzeit and another. Judgment for defendants, and plaintiff appeals. Affirmed.

E. P. Lipscomb and Geo. C. Altgelt, both of San Antonio, for appellant. Boyle & Storey, of San Antonio, for appellees.

MOURSUND, J. George C. Altgelt sued Charles X. Gutzeit, county commissioner for precinct No. 2 of Bexar county, and Peter P. Hoefgen, county treasurer of Bexar county, seeking to restrain the payment to said Gutzeit of a salary of $200 per month, which it was alleged had been paid him, and, unless enjoined, would continue to be paid him, under the provisions of a special act of the Legislature approved March 24, 1913, known as the "Bexar County Road Law," the title of which act was recited. It was alleged that said act of the Legislature is unconstitutional and void in so far as it attempts to fix the salaries of the county commissioners of Bexar county at $200 per month, in that it illegally regulates and attempts to regulate the affairs of Bexar county by local or special law different from the general law of the state of Texas. Plaintiff alleged that he was the owner of real and personal property situated in Bexar county subject to taxation by the state and county, and in fact taxed, and that by the payment of said amount to Gutzeit each month plaintiff's burdens as a taxpayer are increased, and that petitioner is without adequate remedy at law. It was stated in the prayer that the restraining order desired should apply only to the salary of $200 per month, and not to the per diem compensation for county commissioners fixed by the general laws of the state.

Defendants answered by general demurrer, a general denial, and a special answer in which the special law referred to by plaintiff was pleaded by stating the date of its approval and reciting its title, and it is alleged that said act is constitutional, and that it is authorized by article 8, § 9 of the Constitution.

The court refused to grant the temporary injunction. Upon the trial it was admitted that Gutzeit was county commissioner of precinct No. 2 and Hoefgen county treasurer, that Gutzeit has since his incumbency in such office received a salary of $200 per month, which was paid him by Hoefgen out of the funds of Bexar county, and that provision for the future payment of such salary has been made by the commissioners' court of Bexar county by virtue of the act of the Legislature approved March 24, 1913. It was also admitted that plaintiff was a taxpayer as alleged by him.

[1, 2] The special act of the Legislature known as the "Bexar County Road Law" is not copied in the statement of facts, but is merely referred to. As it is a special law, not made a public act by its own provisions, it appears that it cannot be taken judicial notice of. City of Paris v. Tucker, 101 Tex. 99, 104 S. W. 1046. However, as it was pleaded by both parties, by giving its title and the date of its approval, as is authorized by article 1823, Revised Statutes, it appears that the entire act was before the court as if it had been copied in full in the pleadings of each party. Railway v. Rushing, 69 Tex. 306, 6 S. W. 834. Such act must therefore be considered a part of the record in this case, although not copied into the statement of facts.

The caption of the act, which fairly outlines its scope and effect, reads as follows:

"An act providing more efficient road laws for Bexar county, conferring on the commissioners' court of Bexar county control of all roads, bridges, drains, ditches, culverts and all works incident to same; providing for the adoption of rules governing same, their alteration or amendment; providing for the abolishment of the office ex officio road commissioner, and prescribing the salaries of the commissioners; fixing the time of meetings of the commissioners' court, and declaring the same cumulative; permitting the county commissioners in Bexar county to engage in other occupations; providing for the manner of purchasing materials and supplies, and of making contracts where the amount is over fifty dollars ($50.00) and less than five hundred dollars ($500.00); providing for the acquiring of land for roads and drainage by condemnation or otherwise; providing for the proper drainage and maintenance of railway rights of way; providing for the referring of petitions for new roads to the county commissioner of the precinct before action is taken; authorizing the employment of all necessary labor, teams, wagons, and clerical help, and providing payment therefor; providing for road or ditch crossings wherever necessary, and the acquiring of land for same; providing for roads sixty (60) feet wide; authorizing the appointment of a county highway engineer, road superintendents and assistant engineers and other assistants, regulating the working of convicts, exempting all persons from road work and abolishing the office of road overseer, defining the word 'road'; providing for the investment of sinking funds; prohibiting the blockading of county roads by trains, etc., and providing a penalty; prohibiting any county officer to be interested in any county contract; fixing ex-officio salary of the county judge; declaring this act cumulative; providing for the construction by the courts, repealing all laws and parts of laws in conflict therewith, and declaring an emergency." Sp. Acts 33d Leg. c. 77.

Section 5 of said act is the one attacked by plaintiff. It reads as follows:

"Each precinct county commissioner shall inspect and supervise from time to time all roads in his precinct, and shall do and perform any and all acts required of him by the commissioners' court, and all other duties required of him by law as county commissioner, and shall receive for his services an annual salary of twenty-four hundred dollars ($2,400.00) per annum, to be paid out of the general fund of the road and bridge fund, or any other available fund or the special road and bridge fund, in monthly installments, and shall be in lieu of all other fees and per diem of all kinds now payable or that may hereafter be allowed by general law."

[3] It is contended that this section, in so far as it provides for a salary of $2,400, per annum, is unconstitutional, in that it consti-

tutes an attempt to regulate the affairs of Bexar county by a local or special law in contravention of section 56, art. 3, of the Constitution. That section of the Constitution provides, among other things, that the Legislature shall not, except as otherwise provided in the Constitution, pass any local or special law, authorizing:

"* * * Regulating the affairs of counties, cities, towns, wards or school districts; * * *

"Authorizing the laying out, opening, altering or maintaining of roads, highways, streets or alleys. * * *"

It is well established that the above-quoted provision with regard to the laying out, opening, altering, or maintaining of roads, highways, streets, or alleys has been, according to our decisions, annulled to all intents and purposes by the amendment to section 9, art. 8, which reads as follows:

"And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

See Smith v. Grayson County, 18 Tex. Civ. App. 153, 44 S. W. 921; Dallas County v. Plowman, 99 Tex. 512, 91 S. W. 221.

The question then arises whether the Legislature in exercising the power given it under the above-quoted amendment is restricted by the provisions of section 56, art. 3, other than the one relating to roads.

[4] If the authority to legislate by special act upon a certain subject is given by a provision of the Constitution other than section 56, art. 3, such authority carries with it the right to enact all provisions which could legitimately be embraced in the bill if section 56 was not a part of the Constitution. Smith v. Grayson County, supra; City of Dallas v. Western Electric Co., 83 Tex. 243, 18 S. W. 552; Texas Savings & Real Estate Ins. Ass'n v. Heirs of Pierre, 10 Tex. Civ. App. 453, 31 S. W. 426; State v. Hanscom, 37 S. W. 453; Railway v. Galveston, 96 Tex. 520, 74 S. W. 537; Withers v. Crenshaw, 155 S. W. 1189; Cravens v. State, 57 Tex. Cr. R. 135, 122 S. W. 29, 136 Am. St. Rep. 977.

[5] The authority to enact special road laws carries with it the right to regulate the affairs of the county in all such matters as may appropriately be connected with or subsidiary to the object of creating an efficient road system. The objection therefore that a special road law contains provisions regulating the affairs of a county is of itself entitled to no consideration. We do not mean to say, however, that a provision regulating the affairs of a county in a matter totally disconnected with the object of providing for a road system could be inserted in a special road law. Such a provision might be as foreign to the subject of providing a system for establishing and maintaining public roads as a provision changing a person's name or locating a county seat, each of which things is also prohibited from being done by a special act.

[6-9] All acts of the Legislature must comply with section 35 of article 3 of the Constitution, which provides that no bill shall contain more than one subject. The contention that section 5 of the special act known as the "Bexar County Road Law" is unconstitutional because it undertakes by special act to regulate the affairs of Bexar county raises the question whether that section relates to a subject which cannot be dealt with by a special law. If this be correct, then it follows that, if said section relates to such subject, it is evident that it is not appropriately connected with or subsidiary to the object of creating a road system for Bexar county, and must be declared to be in violation of the Constitution. In other words, if this act embraces two subjects, it violates section 35, art. 3, which has not been pleaded or relied on, but, in addition, it may be declared to violate section 56, art. 3, in that it enacts legislation upon a subject mentioned in said section, and not permitted under any other section of the Constitution, either expressly or as an essential or appropriate incident to any subject expressly permitted by another section. We therefore deem it advisable to go into the matter further than is perhaps necessary under the pleadings and brief of appellant. We will first state and discuss the legislation existing at the time said act was enacted, and then consider the provisions of said act, and construe section 5 thereof. By general law (Vernon's Sayles' Ann. Civ. St. 1914), it was provided as follows with respect to the compensation of county commissioners:

Art. 3870. "Each county commissioner, and the county judge when acting as such, shall receive from the county treasury, to be paid on the order of the commissioners' court, the sum of three dollars for each day he is engaged in holding a term of the commissioners' court, but such commissioners shall receive no pay for holding more than one special term of their court per month."

Art. 6901. "The county commissioners of the several counties are hereby constituted supervisors of public roads in their respective counties, and each commissioner shall supervise the public roads within his commissioner's precinct once each year, and shall receive as compensation therefor three dollars per day for the time actually employed in the discharge of his duties, to be paid out of the road and bridge fund of the county: Provided, that no commissioner shall receive pay for more than ten days in each year. * * *"

The general law (Vernon's Sayles' Ann. Civ. St. 1914), with respect to meetings was as follows:

Art. 2274. "The regular terms of the commissioners' court shall commence and be held at the courthouse of their respective counties on the second Monday of each month throughout the year and may continue in session one week: Provided, however, that the provision of this act shall not be construed to be mandatory upon the court to hold more than one session of the court each quarter if the business of the court does not demand a session, and any session may adjourn at any time the business of the court is disposed of."

Art. 2275. "Special terms of said courts may be called by the county judge or any three of the county commissioners, and may continue in session until the business is completed."

There was a special road law for Bexar county (Special Laws 1909, c. 8) which provided that each member of the commissioners' court should be ex officio road commissioner of his district, and contained the following statement with respect to compensation:

"Each of said commissioners shall receive as salary for the services required of them by this act $400.00 per annum, payable quarterly, or as the commissioners' court may determine."

The act now under consideration (Sp. Acts 33d Leg. c. 77) contains, among others, the following provisions:

Sec. 3. "It is hereby specially provided that the office of ex officio road commissioner as now provided by law is hereby abolished in the county of Bexar, and from and after the final passage of this act the several commissioners of Bexar county shall cease to act as ex officio road commissioners, and their bonds as such shall be null and void, except for their official acts prior to the date of the final passage of this act."

Sec. 6. "The commissioners' court of Bexar county shall meet at the courthouse of Bexar county at ten o'clock a. m. each Monday, or on such regular day of the week as the court may fix in its rules, as provided in section 2, and may remain in session until the business before the court is transacted. This provision is cumulative of all other laws governing the convening of the commissioners' court, and no notice of such weekly meetings shall be necessary."

Sec. 7. "It is hereby specially provided that it shall not be unlawful for any county commissioner to engage in any other occupation or business, but should a county commissioner, by virtue of such other business or occupation, fail or neglect to perform his duties as county commissioner he shall be subject to removal from office in the manner provided by law for the removal of county officers. A failure to attend meetings regularly shall be grounds for such removal."

Sec. 14. "Should the commissioners' court deem it advisable, it shall have the right to employ all clerical assistance necessary to attend to the affairs of the commissioners' court, and all clerical work connected with the official duties of the members thereof, and to fix the salaries of such assistants to be paid out of the general fund of the county, or any other available fund."

Sec. 27. "The provisions of this act are and shall be held and construed to be cumulative of all general and special laws of this state, on the subjects treated of in this act, when not in conflict therewith, but in case of such conflict this act shall control as to Bexar county."

The Legislature had made the commissioners ex officio road commissioners of their districts, and awarded compensation for the services required of them by the act of 1909. In 1913 it abolished the office of ex officio road commissioner, and prescribed additional duties to be performed by the county commissioners as such, and in dealing with the subject of compensation the words for "services required of them by this act" were not used, but, instead, section 5, attacked by appellant, was inserted. The other sections of the act of 1913 above copied indicate an intention on the part of the Legislature not to confine itself to such matters as appertain strictly to the duties imposed on the commissioners with respect to roads.

We come then to section 5, and in view of the matters above set forth it seems very clear that the Legislature intended to fix a salary to cover all the duties prescribed by law, whether with respect to roads or not. If it be given a literal construction, it certainly so provides. But it is agreed that said section can be and should be construed to mean that the $2,400 per annum is to be received for services in connection with roads alone. We do not see how this can be done. In the first place, the very act itself undertakes to provide for holding regular terms of court every week, and thus, if the per diem provided by article 3870 could be collected for all of the time used in holding court, the compensation of the commissioners would be a very considerable amount in excess of $2,400 per annum; an amount of such consequence that it would naturally occur to the person drawing the bill that it should be expressly mentioned as excluded if it was to be received in addition to the $2,400. In the next place, the Legislature undertook to provide that a failure to attend meetings regularly should be ground for removal, which indicates that the special act was regarded as fixing an absolute salary to be received regardless of the number of days the commissioners should attend sessions of the court, and therefore it would be advisable to fix a penalty for failure to attend regularly. The abolishing of the office of ex officio road commissioner and the change of verbiage from that used in the former law also indicate the intention to make the salary of $2,400 cover all compensation to be received. But it may be argued that the Legislature merely fixed the amount to be allowed for services in connection with roads at the difference between the amount which would accrue under article 3870 and the $2,400 allowed by the special act, and that this, in effect, is the same as if such special act had named a certain amount to be received for road services alone. This is plausible, but it is difficult to ascribe to the Legislature an intent to allow varying sums to the commissioners for road services, and that would be the effect of such a construction. For instance, if one commissioner was absent from the court 50 days more than another, he would receive $150 less under article 3870, but by the special act would be allowed $150 more than the other commissioners for services in connection with roads. We cannot ascribe the use of the language contained in section 5 to an inadvertent failure to express the real intent, for the real intent, as gathered from previous legislation and other provisions of the act in question, appears plainly to coincide with the language used in said section, and, as the same Legislature used similar language in other special road laws, and the next Legislature followed with similar acts, we may take it that such Legislatures have construed the Constitution to

permit them to enact provisions in special road laws fixing the entire compensation to be received by county commissioners.

We come, therefore, to the direct question whether the provision fixing the compensation to be received by county commissioners for all services prescribed by general law, as well as those prescribed by an act purporting to establish a system for laying out and maintaining the public roads, relates to a subject so disconnected from and independent of the subject of providing a system for laying out roads as to make the law objectionable on the ground that it embraces two subjects within the meaning of section 35, art. 3, of the Constitution.

"None of the provisions of a statute will be held unconstitutional when they all relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title." Lewis' Sutherland on Statutory Construction, § 118.

See Austin v. Railway Co., 45 Tex. 265; Tadlock v. Eccles, 20 Tex. 793, 73 Am. Dec. 213; Johnson v. Martin, 75 Tex. 40, 12 S. W. 321; Joliff v. State, 53 Tex. Cr. R. 61, 109 S. W. 176; Ex parte Abrams, 56 Tex. Cr. R. 465, 120 S. W. 883, 18 Ann. Cas. 45; Howth v. Greer, 40 Tex. Civ. App. 559, 90 S. W. 211; Newnom v. Williamson, 46 Tex. Civ. App. 615, 103 S. W. 656; Joy v. City of Terrell, 138 S. W. 215.

It is also well settled that the courts will construe section 35, art. 3, of the Constitution "liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it was adopted." Austin v. Railway, supra. There is so much danger connected with the passage of local and special laws that the legal mind views with concern every provision which is not very clearly germane to the subject, and is apt upon first impression to condemn all doubtful provisions, especially when they carry with them large disbursements of public funds. There being no necessity for making the provision relating to compensation apply to services other than those connected with the subject of roads, it is natural that in this case, upon first impression, it would appear that the necessary connection does not exist. It must, however, be borne in mind that there is a certain connection which makes these subjects overlap each other. The commissioner under the general law draws $3 per day for his services in attending the meetings of the commissioners' court. At such meetings a considerable portion of his time is occupied, even under the general law with matters relating to public roads. A special law which seeks to inaugurate a more efficient road system necessarily, or at least very probably, will require more time to be devoted to road matters by the commissioners' court. Such special law therefore necessarily or probably affects the amount of compensation received in the aggregate by the county commissioners for attending court. If this conclusion is correct, then it follows that by a special road law, without saying a word about the compensation to be received for attending court, the amount paid by the county to its commissioners may be increased, and the law would be unobjectionable. If so, it seems the further conclusion would follow that any matter which is affected by the special law when drawn in a manner conceded to be unobjectionable is an appropriate incident to the subject of inaugurating a road system, or at least has such a connection therewith as to permit of a provision being inserted which includes all compensation to be received for attending meetings as well as for superintending and supervising roads. Again, it appears that in a special road law additional duties with respect to roads can be prescribed, not only for the commissioners individually, but also for the commissioners' court. It would seem that the matter of compensation is of no greater importance legally than that of duties and powers, and that such matter of compensation has such a connection with the matter of duties and powers as to appropriately permit of its being dealt with in the same act. In the case of Smith v. Grayson County, supra, the county attorney sued to recover certain commissions and costs alleged to be due him by the county under the general laws of the state by reason of the fact that the county had worked the convicts, in whose cases such commissions and costs accrued, upon the roads until their fines and costs had been discharged. The county relied for its defense upon a provision of a special road law, to the effect that the commissioners' court should not pay any costs adjudged against convicts if such convicts worked out their fine and costs upon the public roads. Among other contentions made by the county attorney was the one that this provision was not embraced in or germane to the title of the act, which was:

"An Act to be entitled an act to create a more efficient road system for the counties of Grayson, Dallas, Galveston, Brown, Comanche, Mills, Fannin, Travis, Hunt, Hill, Kaufman and Fayette, in the state of Texas authorizing the employment of a road commissioner, defining his duties, prescribing penalties for his failure to perform his duties, and further defining the powers and duties of the commissioners' courts of the said counties under said act." Acts 22d Leg. c. 54.

The court said:

"If the title to the act fairly gives reasonable notice of its subject-matter, the act will be upheld. The main subject of this act is the creating of a system of public roads and highways, and in furtherance of this purpose the commissioners' court is authorized in its discretion to utilize the labor of county convicts; and the commissioners' court, in its duties of managing the business of the county and controlling the convicts, is prohibited from paying the costs that may be adjudged against the convict. The terms employed in the title of this act are fairly indicative of the subject-matter of the act, and fully meet the requirements of section 35, art. 3, of the Constitution."

It appears that, as the providing for working county convicts upon the public roads is a legitimate incident to a road law, it was proper to go a step further and deal with the matter of costs accruing in the cases against such convicts. In that case county officers were deprived in a special road law of part of the emolument given them by general law, and it was held that this was a matter incidental to the general subject of the act. That case illustrates fairly well the far-reaching effects which may legitimately be accomplished by reason of the fact that the subject is connected with that which expresses the general object to be accomplished.

We have carefully considered this case, and, bearing in mind the rules to be applied in determining whether a law is unconstitutional, as clearly enunciated in the case of Brown v. City of Galveston, 97 Tex. 9, 75 S. W. 488, we conclude that it is our duty to hold that the section of the Bexar county road law attacked in this case does not contravene the Constitution. It is difficult to determine in many cases whether there is such a connection between subjects as is required by the Constitution, and we regard this as one of those cases, but, there being a serious doubt in our minds whether the Legislature exceeded its powers, that doubt has been, as it must be, resolved in favor of the validity of the law. It is not the province of the courts, as is said by our Supreme Court in the case of Glass v. Pool (Sup.) 166 S. W. 377, to declare a law invalid because it is unwise or unjust, or because opposed to public policy or the spirit of the Constitution. It must violate some express provision of the Constitution.

The judgment is affirmed.