## MORTON SALT CO. v. WELLS et al.

### No. 10725.

Court of Civil Appeals of Texas. Dallas.
Nov. 25, 1930.

Rehearing Denied Dec. 20, 1930.

did. Plaintiffs made no claim before the board for exemplary damages, hence no ruling or order was made with reference to that matter. The trial below resulted in judgment for plaintiffs, based on answers of the jury to special issues, for $10,000, from which this appeal is prosecuted.

The material facts are these: Defendant collected bulk salt in a large room at its plant at Grand Saline, Tex., which was later dug out by a machine called "the digger," transferred through a hopper to a buggy or cart, and conveyed to the drier. The digger machine was covered with metal, stood on three wheels, was operated by an electric motor, the current for such purpose being transmitted by cable of copper wires incased in rubber, about 40 feet in length, extending from the top of the building and entering the machine through an iron tubing 18 inches to 2 feet in length, the movements of the machine being directed and controlled exclusively by uninsulated metal levers. At the time Wells was killed, the machine had been in use several years, was worn, had developed considerable vibration, in damp weather would become so charged with electricity as to shock and sting on being touched. The cable had been used since 1926, its insulation in places had become worn, and several weeks prior to the accident the rubber casing at the point where it entered the machine caught fire and burned about 3 feet. The evidence justifies the conclusion that, on reasonable inspection by one possessing knowledge of electricity, the condition of the cable, its insulation, the coils of the motor, and the machine, would have been disclosed, but that such inspection was not given. The levers could have been handled with safety had they been properly insulated, or the machine could have been equipped with grass rope instead of metal levers, and operated with safety. There was no device in use to indicate when the machine was charged, or to automatically stop its operation when in such condition, although such devices could have been installed. Wells was shocked and knocked down, while operating the digger machine, the day before being killed, and on this fact being reported, the matter was referred to a Mr. Guinn, defendant's employee in charge of all of the electrical problems of the plant, who took the motor out, kept it several hours, reinstalled it the same afternoon, stating at the time that it had been repaired. After the motor was reinstalled, the machine was operated by the night shift and for a short while next morning, without unusual incident, until Wells was shocked and killed while in the act of handling a lever in the operation of the machine.

In answer to special issues, the jury found defendant guilty of gross negligence proximately causing the death of Wells in

Harry P. Lawther and Shelby Cox, both of Dallas, and Earl M. Greer, of Wills Point, for appellant.

Jones & Jones, of Mineola, and Crawford & Fletcher, of Grand Saline, for appellees.

LOONEY, J.

Nora Wells, widow of Arthur Wells, brought suit as authorized by section 26, art. 16, of the Constitution, for herself and as guardian for the four minor children of herself and deceased husband, against Morton Salt Company, to recover exemplary damages for the death of the husband and father, alleged to have resulted from the gross negligence of defendant. At the time of death, deceased was an employee of defendant, a subscriber under the Workmen's Compensation Law; his death was reported to the Industrial Accident Board, also to the Texas Employers' Insurance Association; plaintiffs made claim before the board against the association for compensation, under the provisions of the law, was awarded $12.46 per week for 360 weeks, and an order was entered requiring the association to satisfy same, by paying $3,674.16 in a lump sum, which it

several particulars, that is, (a) in maintaining in use the worn and dilapidated digger machine, (b) in maintaining the insulation on the electric wires at the point of entrance to the machine in its then condition, (c) in failing to have the levers used in operating the machine properly insulated, (d) in failing to have an automatic light bulb or fuse box attached to the wires connecting the machine to indicate when the machine was charged and to automatically cut off the current in such case. The evidence was sufficient, in our opinion, to justify these findings and we adopt them as our conclusions on these issues.

Defendant assigned error on the action of the court in overruling its plea in abatement. The contention is that the jurisdiction of the district court over the cause of action here asserted is appellate and not original; that the Industrial Accident Board has original jurisdiction of the claim, and, as plaintiffs failed to prosecute same before that tribunal, its plea in abatement should have been sustained. This contention, in our opinion, is out of harmony with the whole scheme of the Workmen's Compensation Law, the purpose of which is to compensate employees, injured in the course of employment, or in case of death their beneficiaries, for the loss of wages. In accomplishing these purposes, the statute created causes of action, unknown to the common law, and abolished the common-law doctrines of "negligence," "assumed risk," "contributory negligence," and "negligence of fellow servants," on the idea, assumed in all cases coming under the law, that the injury complained of resulted unavoidably from the occupation in which the employee was at the time engaged. The law also deprived the employee of the right to sue the employer for damages resulting from negligence, and in lieu gave him or beneficiaries, as the case may be, a cause of action against the association for compensation, measured by the average weekly wages of the injured or deceased employee, to be paid in amounts and for the length of time enumerated in the statute and as adjudicated by the board, or a court, in case of suit to set aside the award. Under this law, all litigation that ensues, whether before the board or a court, is between the employee or beneficiary on one side and the insurance association on the other.

The cause of action here asserted had no existence at common law, nor did it originate in statutory enactment, but was created by section 26 of article 16 of the Constitution, reading as follows: "Every person, corporation or company, that may commit a homicide, through wilful act or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."

The contention that the claim for exemplary damages should have been prosecuted primarily before the Industrial Accident Board is based on language of section 5 of article 8306, Rev. St., the Compensation Law, as follows: "Nothing in this law shall be taken or held to prohibit the recovery of exemplary damages by the surviving husband, wife, heirs of his or her body, or such of them as there may be of any deceased employee whose death is occasioned by homicide from the wilful act or omission or gross negligence of any person, firm or corporation from the employer of such employee at the time of the injury causing the death of the latter. In any suit so brought for exemplary damages the trial shall be de novo, and no presumption shall exist that any award, ruling or finding of the Industrial Accident Board was correct. In any such suit, such award, ruling or finding shall neither be pleaded nor offered in evidence."

Defendant seems to rest the contention on the language in the statute to the effect that the trial of the suit for exemplary damages shall be de novo, that no presumption shall be indulged that any ruling or finding of the Industrial Accident Board was correct, nor shall the award or ruling of the board be pleaded or offered in evidence on the trial of such suit. The argument is that if it was not the clear intention of the statute that all claims for exemplary damages should be passed upon by the Industrial Accident Board, from whose decision there was to be an appeal to the courts, why the provision that the trial shall be de novo? and why the provision that no presumption should be indulged that an award or finding of the board was correct? and why the provision that in any such suit the award or finding should neither be pleaded nor offered in evidence?

In legal parlance "trial de novo" means a trial anew on appeal, of the entire case, whether of law or fact, according to the usual or prescribed mode of procedure in such cases (7 Words and Phrases, Third Series, pp. 630, 632), but we do not think the language, in the connection in which it was used, was intended by the Legislature to have this meaning, because such meaning is in conflict with the scheme and purpose of the compensation law; furthermore, it was not within the power of the Legislature, if such had been attempted, to abolish the cause of action created by the Constitution in favor of the surviving husband, wife, and heirs against the party responsible for a death, and create in lieu thereof a cause of action against a party in no way responsible. The obvious purpose of the Legislature in mentioning the subject of exemplary damages at all in this connection was to forestall the possibility of a doubt as to the right of beneficiaries under

the Compensation Law, who may also be entitled under the Constitution to exemplary damages, to seek recovery thereof by suit separated entirely from the proceedings before the board for compensation, that such suit should not be confused with the compensation matter, nor the trial thereof embarrassed by any award, ruling or finding of the board on the question of compensation.

■■ The first thing, in construing a statute, is to ascertain the object sought to be accomplished, as this furnishes the key to a correct understanding. When this is ascertained, general words will be restrained, those of narrow meaning will be expanded, and words will be modified or altered so as to obviate a meaning repugnant to or inconsistent with the dominant purpose of the statute. Mr. Sutherland, in his work on Statutory Construction, § 347, announced the doctrine as follows: "* * * Courts will not follow the letter of the statute when it leads away from the true intent and purpose of the Legislature and to conclusions inconsistent with the general purpose of the act. The intent is the spirit which gives life to a legislative enactment. * * *" See also Edwards v. Morton, 92 Tex. 152, 154, 46 S. W. 792.

We are of opinion that the court committed no error in overruling defendant's plea in abatement.

Defendant presents for review the action of the trial court, (a) in overruling demurrers urged to plaintiffs' petition, (b) in refusing to instruct a verdict for defendant, (c) in submitting the question of defendant's liability, and (4) in not granting its motion for a new trial, all based on the central idea that actionable negligence was neither alleged nor proven, that no act or omission characterized as gross negligence was either directed or ratified by defendant or any of its officers, that at most plaintiff's allegations and proof simply show ordinary negligence on the part of defendant's subordinate agents and servants, for which, under applicable rules of law, it is not liable.

Defendant cites a number of cases in support of its contention that no recovery for exemplary damages against the corporation can be had in the absence of a showing that the acts or omissions of the servant complained of were either directed or ratified by an agent or servant representing it as a corporate officer.

■ No useful purpose will be served by the discovery of a conflict, if perchance one exists, between the cases cited, and the doctrine approved by the Supreme Court in Chronister v. Williams, 116 Tex. 207, 288 S. W. 402, because in the latter case, after a review of authorities and a thorough consideration of the question, the Supreme Court announced the doctrine that liability of a corporation to a surviving spouse or children for exemplary damages, for homicide committed by a corporation through gross negligence, under article 16, § 26, of the Constitution, depends upon whether particular conduct of an employee complained of was within the scope of his authority, so as to be considered the act of the corporation, and that it is not necessary to show the existence of an official relation between the corporation and the servant or agent whose acts or omissions are involved.

The Chronister Case has been cited with approval in the following cases, to wit: Cicero-Smith L. Co. v. Denton (Tex. Civ. App.) 16 S.W.(2d) 932, 934; People's Ice Co. v. Nowling (Tex. Civ. App.) 16 S.W.(2d) 976, 979; Fort Worth, etc., Co. v. Russell (Tex. Civ. App.) 28 S.W.(2d) 320, 326, 327; Tracey v. Wichita Ice Co. (Tex. Civ. App.) 30 S.W.(2d) 673, 676.

■ Applying the rule to the facts under consideration, we encounter no trouble in reaching the conclusion that defendant was liable for the gross negligence of its electrician, Mr. Guinn. Furthermore, the cumulative effect of the findings of the jury is that defendant was guilty of gross negligence in failing to discharge the nondelegable duty imposed by law upon it as master to furnish Wells, its servant, with safe, suitable appliances and instrumentalities for the work in hand. This duty was a continuing one and included that of adequate inspection, therefore defendant was liable for the negligence of one to whom the performance of such duty was entrusted. See 39 C. J. 285, § 412; Quinn v. Glenn, 103 Tex. 255, 126 S. W. 2; Missouri, etc., Co. v. Ferch (Tex. Civ. App.) 36 S. W. 487, 489; St. Louis, etc., Co. v. Skaggs, 32 Tex. Civ. App. 363, 74 S. W. 783, 786; Coca-Cola Co. v. Williams (Tex. Com. App.) 209 S. W. 396, 397; St. Louis, etc., Co. v. Ewing (Tex. Com. App.) 222 S. W. 198; Hines v. Flinn (Tex. Civ. App.) 222 S. W. 679.

■ The digger machine, the electric motor, the wires, and their proper insulation, were all under the management, control, and supervision of defendant and its servants; the accident that cost Wells his life would not have happened, in the ordinary course of things, if those charged with the duty had used proper care. Confronted with these facts, defendant essayed no explanation whatever as to the cause, that is, as to the how or why of the machine becoming dangerously charged with electricity, hence in the absence of explanation, negligence became sufficiently established under the doctrine of res ipsa loquitur. See McCray y. G., H. & S. A. Ry. Co., 89 Tex. 170, 174, 34 S. W. 95; Washington v. M., K. & T. Ry. Co., 90 Tex. 320, 321, 38 S. W. 764; 7 Words and Phrases, First Series, pages 6136, 6139.

■ It is argued, however, that because defendant exercised some care, the charge of

gross negligence was disproven. The pertinent facts are these: Wells was shocked the day before he was killed; Guinn, defendant's electrician, took the motor out of the machine, kept it several hours, brought it back, reinstalled it, stating at the time that it had been repaired. These are the circumstances relied upon by defendant in support of .the contention just stated. Defendant, however, failed to show what was in fact wrong with the motor, or the repairs that were made, and no inspection was shown to have been given the machine in other respects, nor the wiring or insulation. Negligence is gross when it is evidenced either by an entire failure to use care, or by the exercise of so slight a degree as to justify the conclusion that the person from whom care was due was indifferent to the interest and welfare of others. See I. & G. N. Ry. Co. v. Cocke, 64 Tex. 156; G., H. & S. A. Ry. Co. v. Kutac, 76 Tex. 477, 13 S. W. 327; Magnolia Petroleum Co. v. Ford (Tex. Civ. App.) 14 S.W.(2d) 97, 99; Missouri Pacific Ry. Co. v. Shuford, 72 Tex. 165, 10 S. W. 408; Galveston, etc., Co. v. Cook (Tex. Sup.) 16 S. W. 1038, 1039; Johnson v. Gulf, etc., Co., 2 Tex. Civ. App. 139, 21 S. W. 274, 275; Dallas, etc., Co. v. Beeman, 74 Tex. 291, 11 S. W. 1102, 1103.

■ "Gross negligence" is a relative term and means greater want of care than is implied by the term "ordinary negligence" but the particular facts and circumstances of each case must be taken into consideration, for what might prove to be simply ordinary negligence under one set of circumstances and conditions might constitute gross negligence under other circumstances and conditions, so, at last, in each case the question is one of fact. The facts and circumstances under consideration justify the conclusion that the care exercised by defendant in taking the motor out and later reinstalling it without a thorough inspection of the wiring, insulation, and the machine in other respects, was so slight as to reveal indifference, on defendant's part, to the interest and welfare of its employees, who, in the course of their labors, were required to use the machinery and appliances. See East Line v. Rushing, 69 Tex. 306, 6 S. W. 834, 839; Gulf, etc., Co. v. Letsch (Tex. Civ. App.) 55 S. W. 584, Id., 94 Tex. 650, 56 S. W. 1134; Fort Worth, etc., Co. v. Russell (Tex. Civ. App.) 28 S.W.(2d) 320, 323.

 Defendant also complains that the verdict and judgment for $10,000 is excessive, exorbitant, and not justified under the law and facts. We do not think so. Exemplary damages are allowed as a punishment to the party responsible for the wrong, and as an example for the good of the public. The combined effect of the findings of the jury was to convict defendant of gross negligence in failing to discharge the nondelegable duty to furnish deceased reasonably safe machinery and appliances. It is common knowledge that electricity is the most subtle and dangerous agent in use, that it adheres to all metal objects, gives no warning of its presence, is without color, motion, body, sound, or odor, and that the only means of detecting its presence is through the sense of touch, and the person thus discovering it is either shocked, burned, or killed outright, as in the instant case. The security of human life, and the safety of those required, in the course of employment, to handle or associate with machinery, tools, and appliances, liable at any time to become charged with this deadly current, demand that those who profit by its use shall exercise the highest degree of care in maintenance, inspection, and operation in situations such as we are considering, and that a failure to exercise this high degree of care is gross negligence that may be punished by the imposition of punitive damages. See Galveston, etc., Co. v. Cook (Tex. Sup.) 16 S. W. 1038, 1039.

Assignments and propositions not discussed have also received our attention, but after carefully considering all assignments and propositions, and finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.