HOUSTON et al. v. GONZALES INDE-
PENDENT SCHOOL DIST.
(No. 5926.)

(Court of Civil Appeals of Texas. San Antonio.
Jan. 16, 1918. On Motion for Re-
hearing, April 24, 1918.)

1. STATUTES ⊙⇒96(5) — SPECIAL LAWS — NO-
TICE—TAXING DISTRICTS.

Const. art. 7, § 3, authorized the Legislature
to pass the special act creating the Gonzales
Independent School District, without notice, al-
though it included the incorporated city of Gon-
zales, which had assumed control of the public
schools under general laws, and become a taxing
district authorized by article 11, § 10, regard-
less of article 3, § 56.

2. SCHOOLS AND SCHOOL DISTRICTS ⊙⇒22 —
DEPRIVING CITY OF PROPRIETARY RIGHTS.

Neither Rev. St. 1911, art. 2872, changing
title of school property from the mayor of ci-
ties to the school trustees, nor the special act
creating the Gonzales Independent School Dis-
trict, and extending the boundaries and chang-
ing the title to its trustees, violated Bill of
Rights, §§ 16, 19, as infringing on the proprie-
tary rights of the city of Gonzales, which had
assumed control of its schools under Rev. St.
1879, art. 3792, because, by assuming control of
the schools under such laws, the beneficial own-
ership was given to the public.

3. CONSTITUTIONAL LAW ⊙⇒92 — VESTED
RIGHTS—MUNICIPAL CORPORATIONS.

A city has no vested rights in powers con-
ferred upon it or its officers for civil, political,
or administrative purposes.

4. SCHOOLS AND SCHOOL DISTRICTS ⊙⇒41(1)
—SCHOOL FUNDS—CONTROL—FORMING NEW
DISTRICTS.

A city which has assumed the control of
the public schools within its limits dedicates to
the use of the public the property it then owns
which is being used for school · purposes, and
all property thereafter acquired; but, where it
votes a bond issue to erect a school building, it
owns the fund derived from the sale of the
bonds, and has exclusive control thereof, and
cannot be compelled to expend any funds on
hand at the time the city is taken into a new
school district.

5. SCHOOLS AND SCHOOL DISTRICTS ⊙⇒22 —
FORMING NEW DISTRICTS—ASSUMING OBLI-
GATIONS OF OLD DISTRICT.

Where a school district was formed and in-
cluded a city which had assumed the control of
its schools, the Legislature could make obliga-
tions of the city district binding on the new
district, under Const. art. 7, § 3, although it
might not be proper to pay them out of local
taxation.

6. SCHOOLS AND SCHOOL DISTRICTS ⊙⇒22 —
TAXATION—VALIDITY OF STATUTE.

Where independent school district was cre-
ated by special act, and included a city school
district still legally required to levy some school
taxes, the fact that the new district was au-
thorized to levy the constitutional limit would
not render the act invalid, because the district
was not required to levy to the limit.

7. CONSTITUTIONAL LAW ⊙⇒48 — CONSTRUC-
TION IN FAVOR OF CONSTITUTIONALITY.

If a statute is susceptible of two construc-
tions, the one making it constitutional must be
adopted.

8. APPEAL AND ERROR ⊙⇒934(2)—ORDERS AP-
PEALABLE—FINAL JUDGMENT.

Where there are statements in the court's
conclusions that a cross-action was deemed sub-
ject to general demurrer, but the judgment does
not specifically dispose of the cross-action, it

will be construed as a final judgment denying
relief on appeal.

On Motion for Rehearing.

9. SCHOOLS AND SCHOOL DISTRICTS ⊙⇒101 —
LIMIT OF TAXATION—"SCHOOL TAX."

In view of Rev. St. 1911, arts. 924, 925, des-
ignating school buildings, in cities which have
assumed the control of public schools, as public
buildings to be provided out of the tax levied by
authority of Const. art. 8, § 9, a tax to pay off
bonded indebtedness for erection of school build-
ings was not a school tax, within the meaning of
Const. art. 7, § 3, limiting amount of levy of
school taxes.

Appeal from District Court, Gonzales
County; M. Kennon, Judge.

Suit by the Gonzales Independent School
District against W. B. Houston. Defendant
having died, the executors of his estate, J.
D. Houston and Mrs. J. A. Mathews, were
made parties defendant. Judgment for
plaintiff, and defendants appeal. Affirmed.

T. F. Harwood, of Gonzales, for appellants.
Rainbolt & Midkiff, of Gonzales, for appellee.

MOURSUND, J. On December 22, 1915,
Gonzales Independent School District sued
W. B. Houston to recover delinquent taxes
for the year 1914, which, with interest, pen-
alty, and costs, amounted to $73.69, alleged
to be due on 541 acres of land, situated with-
in the limits of the school district, but out-
side of the limits of the city of Gonzales.
Upon the death of W. B. Houston, the inde-
pendent executors of his will, Julia A. Ma-
thews and J. Dunn Houston, made them-
selves parties defendant, and adopted the an-
swer filed by W. B. Houston.

The defenses pleaded will be sufficiently
disclosed in discussing the questions of law
presented by the assignments of error. In
addition to defending against plaintiff's de-
mand for the taxes of 1914, Houston contend-
ed that the taxes levied against his proper-
ty by plaintiff for the years 1915 and 1916
were illegal, on the ground that the act
creating the district was void, and prayed
for an injunction restraining the collection
thereof, as well as restraining the making
of further assessments against his property
by the trustees of plaintiff. In the alterna-
tive, he prayed that, if it should be held
that the act was valid, then that the board
of trustees be restrained from levying and
collecting any tax which, considered in con-
nection with taxes levied and collected by
the city of Gonzales for school purposes and
for the payment of bonds issued for school
purposes, would exceed the 50 cents on the
$100 valuation of property authorized by the
Constitution.

The case was tried upon an agreed state-
ment of facts, and judgment rendered in fa-
vor of plaintiff.

The trial court filed findings of fact and
conclusions of law. As the findings of fact
are lengthy, we will undertake to state the

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

substance thereof in our own language, and will also change the arrangement thereof to some extent.

The 33d Legislature, at the first called session, passed a special law (Acts 33d Leg. c. 14) creating the Gonzales Independent School District, including within the boundaries thereof all of the territory contained within the limits of the city of Gonzales and certain additional land aggregating 24,086 acres. The Governor, at said session, submitted to the Legislature the subject of the creation of independent school districts. No notice of the intention to apply for the creation of said district by special law was published in the locality affected by it prior to the introduction of the bill in the Legislature.

The provisions of the act necessary to be considered in disposing of the case are as follows:

"Sec. 2. That the city of Gonzales, which is situated within said boundaries, is hereby divested of the control of the public free schools within its limits, and said Gonzales Independent School District is hereby invested with exclusive control of the public free schools within the limits of said district, as hereinbefore defined, and the present board of trustees is hereby made the board of trustees of the Gonzales Independent School District, and the terms of office of the said members of the said board shall expire under this act at the same time as if this independent district had not been created; and their successors shall hereafter be elected as provided by the general laws; and the title and rights to all property owned, held, set apart or in any way dedicated to the use of the public schools of the city of Gonzales heretofore vested in the mayor, city council or board of trustees of said city, shall be and are hereby invested in the board of trustees of the said Gonzales Independent School District and their successors in office. All contracts, obligations and outstanding indebtedness, except bonds of the Gonzales public schools, shall be binding upon the Gonzales Independent School District created by this act.

"Sec. 3. That the said Gonzales Independent School District shall have and exercise, and is hereby vested with all of the rights, powers, privileges and duties of a town or village incorporated under the general laws of the state for free school purposes only, and the board of trustees of said Gonzales Independent School District shall have and exercise, and is hereby vested and charged with all the rights, powers, privileges and duties conferred and imposed by the general laws of this state upon the trustees of independent school districts created and organized under the general laws of this state. * * *

"Sec. 4. The board of trustees of the Gonzales Independent School District shall have power to levy and collect an annual ad valorem tax not to exceed fifty cents on the one hundred dollars valuation of taxable property of said district for the maintenance of schools therein, and a tax not to exceed twenty-five cents on the one hundred dollars for the purchase of sites and the purchasing, construction, repairing, leasing or equipping public free school buildings within the limits of the Gonzales Independent School District: Provided, that the amount of maintenance tax, together with the amount of bond tax of said district, shall never exceed fifty cents on the one hundred dollars valuation of taxable property in said district. Said board of trustees shall have power to issue coupon bonds of the district for the purpose of purchasing, constructing and repairing of public free school buildings and purchasing lands for building sites, to be made payable not exceeding forty years from date, in such sums as they shall deem expedient, to bear interest not exceeding five per cent. per annum: Provided, that when such buildings are to be wooden, the bonds herein provided for shall not run for a longer period than twenty years: Provided, that the aggregate amount of bonds issued for the above-named purpose shall never reach an amount that the tax of twenty-five cents on the one hundred dollars valuation in said district will not pay current interest and provide a sinking fund sufficient to pay the principal at maturity: And provided further, that no such tax shall be levied and no such bonds issued until after an election shall have been held within said district, wherein a majority of the property taxpaying voters, voting at said election, shall have voted in favor of the levying of said tax, of the issuance of said bonds, or both, as the case may be: Provided that the Gonzales Independent School District may proceed, during the current calendar year, in the matter of holding an election for the levy of school taxes for either maintenance or bond purposes: And provided further, that the specific rate of tax shall not be determined in the election: Provided, that the election as herein provided for shall be ordered by the board of trustees of the Gonzales Independent School District, or a majority thereof, upon the petition of twenty property taxpaying voters of said district for said purpose. * * *

"Sec. 5. * * * The said trustees, if authorized to do so; as herein provided, shall have the power to levy, assess and collect taxes for the year 1911, such taxes to be levied, assessed and collected on such property as was contained in said district on the date of the taking effect of this act, for the year 1911, and for all future years such taxes shall be levied, assessed and collected against property situated in said district on January 1, of the year such taxes are levied, assessed and collected."

The tract of land containing 541 acres, described in plaintiff's petition, is within the new school district, but not within the limits of the city of Gonzales. Said land was owned by W. B. Houston, the original defendant herein, and he refused to pay the taxes assessed against it by plaintiff. The taxes were properly levied, assessed, and declared delinquent as provided by law, and the suit brought after all preliminary steps had been taken by plaintiff to create a lien upon the land.

After several acts of incorporation by the republic of Texas, and by the state, on March 6, 1873, the Legislature by special act (Sp. Acts 13th Leg. c. 17) granted a new charter to the city of Gonzales, defining its powers and fixing its limits; and while operating under such charter, on August 4, 1880, the city council, by ordinance passed according to law, accepted the provision of the Revised Statutes of 1879, tit. 17, with the same boundaries as fixed by the charter. At that time the city had a population of more than 1,000 and less than 5,000 inhabitants. In 1883 the Legislature contracted the boundaries of the city, and afterwards slight alterations took place, so that when the act creating the new district was passed the territory embraced within the city limits consisted of about 900 acres.

At the election held April 13, 1885, the city of Gonzales assumed control of the public free schools within its limits, and at the same election decided that the control of its schools should be placed in a board of trustees. These trustees were duly elected and placed in charge of the schools under the terms of the Revised Statutes, and they and their successors remained in charge of said schools until the new district was created.

In 1889 the city of Gonzales issued and sold valid bonds in the sum of $15,000 for the purpose of constructing a brick building for the city schools, and levied a tax of 25 cents on the $100 of all taxable property in the city to pay the interest and create a sinking fund. These bonds were refunded in 1897, and $9,000 in refunding bonds legally issued, dated July 1, 1897, bearing interest at the rate of 6 per cent., and thereafter a tax of 12 cents on the $100 ad valorem was duly levied for the purpose of paying the interest and providing a sinking fund for their redemption. Such of these bonds that remain unpaid are still a charge upon the taxable property of the city of Gonzales.

There remains unpaid $1,500 of a valid bond issue of $5,000, dated September 1, 1897, bearing 6 per cent. interest. The ordinance providing for these bonds assessed and directed the levy of an annual tax of 8 cents on the $100 value of taxable property interest and provide a sinking fund. These bonds were issued "for the erection of a school building for negroes and making addition to the high school building, and for sewage connections with the high school."

The city issued $30,000 worth of bonds, voted at an election held August 13, 1912, for the purpose of erecting a new city school, and provided by the ordinance directing the issuance thereof for a tax of 14 cents on the $100 valuation of property to pay interest and provide a sinking fund. These bonds were sold to the state, and are unpaid and a valid charge against the city.

Under proper authority, in 1889, the board of school trustees of the city of Gonzales sold to various parties four acres of land originally belonging to the city of Gonzales, the deeds being executed by the mayor, the total consideration being $4,610, which sum was turned over to the board of trustees of schools of the city of Gonzales, and by them expended in furnishing and equipping the public schools of the city.

On May 11, 1900, the city purchased a site for a school for Mexican children, paying $450 therefor. Before the special act of 1913, creating the new school district, was adopted, the city had set aside a block of valuable land for a ward school, erected a wooden schoolhouse thereon, and inclosed the same at a cost of $1,500, paid by the city, and said property had been in use for school purposes for several years prior to the creation of the new district. The city had also, prior to 1912, purchased a lot and erected a residence for the janitor of the city schools.

In 1894, after an election in favor thereof, a tax of 25 cents on the $100 ad valorem was duly levied for the support and maintenance of the public schools. In 1910 another election was held, and the tax raised to 35 cents on the $100 valuation of property. The 25 cent tax was regularly assessed and collected from the taxpayers, including W. B. Houston, from 1894 to 1910, and the 35-cent tax from 1910 to 1914, and said tax is still in force, unless repealed by the special act of 1913, forming the new district.

The city of Gonzales, by its council, regularly fixed, and had assessed and collected from the property owners within its territory, for the years 1914, 1915, and 1916, in addition to other taxes, the following specific rates for the purpose of paying interest and providing a sinking fund of two issues of bonds, the proceeds of which had been used by it for the construction of school buildings on ground within the city owned by it prior to the special act, namely: Old school building bonds, 3 cents on the $100 valuation; New city school building bonds, 14 cents on the $100 valuation; in the aggregate, 17 cents on the $100 valuation for each year. For said years the amount of taxes assessed and levied by the city for the purpose of constructing or purchasing public buildings, waterworks, sewers, and other permanent improvements, including the amount levied and assessed to provide interest and sinking fund for the bond issues, the proceeds of which were used to erect school buildings, at no time exceeded 25 cents on the $100 valuation.

From 1881 to the time of his death W. B. Houston was a resident of the city of Gonzales, and during each year of such period owned property subject to taxation for city purposes, and such taxes were assessed against him and paid by him from 1882 to 1916, inclusive.

The sum of $17,757.83 was paid out by the city on the schools and school property, since the special act took effect, for the completion of building contracts and obligations made by the city for the construction of said building in 1912. The contracts for heating and furniture were made shortly after said act took effect, by the city council at the instance of the board of trustees of the new district, which had no money or credit, and the city holds the note of the school board for the latter sums.

The trustees named in the special act creating the new district, who were then the trustees of Gonzales City Independent School District, formally accepted the provisions of the special act at their meeting of September 19, 1913, and had the same recorded in their minutes. These trustees of the new district immediately took charge of the schools under the provisions of the act, and of the school property in the city of Gonzales, except the

new building and one under process of repair, of which they took charge upon their completion in the early part of 1914, and have since had control and possession of all such school property without protest on the part of the city of Gonzales, and without rent to, or demand for rent from, said city or any other authority.

An election held in the new district, pursuant to petition of 20 taxpaying voters, filed December 16, 1913, resulted in favor of the proposition that the board of trustees of said district should have the power to levy and collect a tax on all taxable property in the district for the support and maintenance of the public free schools in said district, not to exceed 50 cents on the $100 valuation of such property, to be levied for the year 1914 and annually thereafter. The board, upon canvassing the vote, levied a tax in the words of the proposition, that is, at a rate not exceeding 50 cents on the $100 valuation, and on August 25, 1914, fixed the tax rate for that year at 30 cents on the $100 ad valorem.

[1] Appellants contend that as the city of Gonzales had assumed the control of its public schools, and had become a taxing district authorized by section 10, art. 11, of the Constitution, and by general laws of the state, it was protected by section 56, art. 3, of the Constitution from regulation under special laws, and by section 57, art. 3, from regulation by local or special laws without constitutional notice. The contention is forcefully stated as follows:

"Where taxing districts have been formed in conformity with the general laws or under any special law authorized by the amendments to the Constitution, and have acquired property, voted maintenance taxes, issued and sold bonds for the construction of school buildings, perfected a legal organization and incurred valid debts and obligations on the faith of such organizations, the power conferred on the Legislature under these amendments has been exercised and exhausted, the purpose has been accomplished, and all schools and towns thus formed as taxing districts are fully protected by the Constitution of Texas from interference by local laws without constitutional notice."

They do not contend that school districts cannot be changed, but that when once provided the amendment to section 3, art. 7, relating to special laws, has no further application thereto, and further legislation would be tested as to its validity, just as if said amendment had never been made a part of the Constitution.

Does the amendment of section 3, art. 7, adopted in 1883, to the effect that the Legislature may also provide for the formation of school districts by general or special law, without the local notice required in other cases of special legislation, only confer power to thus create districts in territory which has not already become a district?

This question has never been directly passed upon, but our courts have taken it for granted, as will be hereinafter shown, that

the power conferred was not thus restricted. In drafting the Constitution of 1876, provisions authorizing legislation with respect to the levy of taxes in school districts contained in the Constitution of 1869 were omitted, and in 1882 it was held in the case of City of Ft. Worth v. Davis, 57 Tex. 225, that the power to authorize the levy of taxes in school districts did not exist unless an affirmative grant of power be found in the Constitution itself. Such a grant was reluctantly conceded to have been given in section 10, art. 11, as to towns or cities which had assumed control, or might assume control, of the schools. The court repudiated the suggestion that section 1, art. 7, impliedly gives the power to the Legislature to direct the levy of taxes in school districts. That section made it the duty of the Legislature to establish and make provision for the support of an efficient system of public schools; but as the method of making provision for the support was stated, and limitations provided, it was held that the right to levy taxes must be granted specifically and could not be deduced by implication. The duty to establish a system of public free schools, in the absence of limitations as to the method to be pursued, would confer the power to create school districts and change them from time to time as might be advisable for the efficiency of the system. In the case just above discussed, Judge Gould said:

"The system of public free schools required subdivisions of the state into school districts, and the Legislature was authorized to constitute any city or town a separate and independent school district."

In the case of State v. Brownson, 94 Tex. 436, 61 S. W. 114, the court stated that such power was probably conferred in view of the restriction in section 56, art. 3, upon local and special legislation with regard to "regulating the affairs of counties, cities, towns, wards or school districts," for in the absence of such restriction no such grant seemed necessary. We take it that under the Constitution of 1876, prior to its amendment in 1883, the Legislature had the power to provide by general law for the creation and alteration of school districts of all kinds, and the power by special law to constitute any city or town a separate and independent school district. The local notice, however, was not dispensed with. The policy of creating school districts as a means of providing an efficient system of public schools had been pursued for many years.

In 1883 the Legislature submitted and the voters adopted the amendment to section 3, art. 7, which, in addition to authorizing an ad valorem tax for the support of the schools, provided:

"And the Legislature may also provide for the formation of school districts within all or any of the counties of this state, by general or special law, without the local notice required in other cases of special legislation, and may au-

thorize an additional annual ad valorem tax to be levied and collected within such school districts for the further maintenance of public free schools and the erection of school buildings therein: Provided, that two-thirds of the qualified property taxpaying voters of the district, voting at an election to be held for that purpose, shall vote such tax, not to exceed in any one year twenty cents on the one hundred dollars valuation of the property subject to taxation in such district, but the limitation upon the amount of district tax herein authorized shall not apply to incorporated cities or towns constituting separate and independent school districts."

The purpose of this amendment was to grant power with respect to the formation of district and the levy of a tax therein. It is evident that it was thought the Constitution of 1876 had gone too far in its restrictions upon the Legislature with respect to these matters. The language is general, and, in the zeal to make it comprehensive and emphatic, the words, "all or any of the counties of the state," were inserted, which were afterwards held to constitute a restriction preventing countyline districts. What the Legislature evidently had in mind in framing that part of the amendment relating to formation of districts was to remove the restrictions imposed by sections 56 and 57, art. 3, and it is not probable that it ever occurred to them that such restrictions should be removed only for the purpose of creating districts where none existed, and, if such had been the intention, it is natural that it would have been expressed in more suitable language. There were many districts in existence at that time, and it is reasonable to suppose that they would have been excepted in express language from the operation of special laws, without notice, had such been the intention of those responsible for the wording of the amendment.

Section 10, art. 11, is held in the Brownson Case to be permissive only, and to be practically superseded by the amendment to section 3 of article 7. It does not vest in the cities or towns a right to assume control of its schools, but merely authorizes legislation permitting such assumption, nor does it vest a right to retain the control when once acquired. There is therefore nothing in section 10 of article 11 which limits, as to cities or towns, the power given the Legislature by the amendment to section 3 of article 7; and if the Legislature has the power to affect, by local act without notice, the boundaries of other school districts, it has the same power as to cities or towns which have been permitted to become school districts by assuming control of the schools. We are unable to draw from appellants' exhaustive summary of school legislation, constitutional and statutory, preceding this amendment, any support for their theory, and conclude that the amendment in question confers authority upon the Legislature to pass a special act creating the Gonzales Independent School District, without no-

tice, although in doing so it included in the limits of the district the incorporated city of Gonzales, which had assumed the control of the public schools.

In the case of State v. Brownson, supra, it was held that the purpose of the amendment was to give the Legislature a free hand in establishing districts, and the court declined to give the language a narrow construction, which would make it confer power only to provide machinery for the formation of districts.

In the case of Cummins v. Gaston, 109 S. W. 476, the district attacked was composed in part of an incorporated city, which had assumed control of the schools in compliance with the statute; and while not material to the disposition of the case, as stated in the opinion, the court expressed its views on the question under consideration in the following language:

"Construing section 3, art. 7, of the Constitution, under the authority of which the special act in this case necessarily proceeds, and in the light of the opinion of the Supreme Court of this state, rendered in the case of State v. Brownson et al., 94 Tex. 436, 61 S. W. 114, we conclude that under said article 7, § 3, the Legislature has authority to create within any and all counties in this state by special act, and without the local notice required in other acts of special legislation, two distinct classes of independent school districts, viz., a class in which an incorporated city or town may be included, together with contiguous territory, lying outside of and beyond the limits of the town or city, as in the present instance. But the trustees of a district so formed can constitutionally levy and collect a special tax only, not to exceed 20 cents on the $100 valuation of taxable property, in any one year, provided that two-thirds of the property tax paying voters of the district voting at an election for that purpose shall vote such tax. And the other class to consist of an incorporated town or city, with limits confined to those of the municipality, which last class may levy 50 cents for maintenance, and 25 cents on the $100 valuation of taxable property for improvements, such district consisting of an incorporated city or town, and with limits coextensive with and confined to the boundaries of such municipality, being specially exempted from the limitation upon taxation specifically imposed by the terms of section 3, art. 7, of the Constitution, upon districts of the first class herein mentioned."

The case of Snyder v. Baird Independent School District, 102 Tex. 4, 111 S. W. 723, 113 S. W. 521, involved the validity of a similar special act, and it was held that the objection that it was a local act, passed without notice, was without merit. That the district included a city which had assumed control of its schools is shown by section 2 of the act, which divests such control. The certificate to the Supreme Court did not include that question.

Since the decision in the Brownson Case, section 3, art. 7, has been twice amended, but the language relating to formation of districts has not been changed. The decisions in the cases above discussed, and the re-enactment of the amendment in the identical language first used, evidence the correctness of the conclusion that there is no

merit in appellants' contentions so far as the authority of the Legislature to create districts composed in part of other taxing districts is denied.

Appellants rely upon a statement made in the case of Cummings v. Gaston, supra, in connection with the court's holding that the new district could not be made to assume the bonds of the city or town issued for school purposes. The court said:

"There seems force in the contention of counsel for appellees that, in extending the bonded indebtedness of the city of Bowie to the added territory placed in the new district by the act, the Legislature only exercised an inherent power analogous to that exercised when by special act the limits of the city are extended so as to impose on the inhabitants of the added territory burdens which they had never created or assumed. But while there are Texas cases and authorities elsewhere to that effect, it must not be overlooked that when these Texas cases were decided the Constitution had not made a vote of the property tax payers a condition precedent to the creation of municipal indebtedness, as is the case in school districts."

Then follows the statement relied upon by appellants, as follows:

"The inherent power of the Legislature to pass laws not prohibited by the Constitution cannot be invoked in this instance, since the act was passed as a special or local law, without notice, contrary to section 57, art. 3, of the Constitution, and must therefore clearly come within the terms of the special power granted in section 3, art. 7, of the Constitution, which, however, grants no authority for the transfer of bonded indebtedness, as is attempted in the act creating the Bowie Independent School District."

We cannot agree to the correctness of the last statement, being of the opinion, as heretofore expressed in the case of Altgelt v. Gutzeit, 187 S. W. 220, upon the authority of the cases therein cited, that if the authority to legislate by special act upon a certain subject is given by a provision of the Constitution other than section 56, art. 3, such authority carries with it the right to enact all provisions which could legitimately be embraced in the bill, if such section 56 was not a part of the Constitution. The Legislature would have the same right to frame the provisions of the special act as it would if it was framing a general law to accomplish the same purpose. Its inherent power would not be affected by the fact that it availed itself of the privilege to use a special act pursuant to authority conferred in the Constitution. The power to create a district carries with it the power to deal with school property in the territory, and to regulate the school affairs of the entire new district, and make all provisions germane to the purpose of creating the new district, and all of this may be done by a special act without notice. However, the authority to legislate by special act without notice must of course be exercised in accordance with and in subordination to all other provisions of the Constitution than those relating to special legislation.

We will take up the objections urged by appellants to the act which involve its validity upon grounds other than that the act is a special one, passed without notice.

[2] Appellants contend that the provision vesting in the trustees of the new district the title to all school property within the limits of the district is invalid. In their answer they allege that such provision violates sections 16 and 19, art. 1, Bill of Rights.

At the time the city of Gonzales assumed control of the public schools within its limits, article 3792, Revised Statutes of 1879, provided that "the title to all houses, lands and other property now owned, or which may hereafter be purchased or acquired by a city or town for the benefit of public free schools, and all houses, lands or other property purchased for the benefit of public free schools in the county, and lying within the limits of any town or city which many have assumed control and management of the public free schools within its limits in conformity with law, shall be vested in the mayor of such city or town in trust for the sole use of public free schools established under this chapter." Article 3793 provided for the sale of property so held in trust, with the consent of the state board of education. In 1889 the Legislature passed an act (Acts 1889, c. 105) vesting title in the board of trustees, but restricting the act to cities organized under special charters or special acts of incorporation; but in 1905 a similar provision was made, with respect to the title to school property in all cities and towns which had assumed the control of the public schools within their limits, whether such property had been theretofore acquired or should be thereafter acquired. This provision is found in the Statutes of 1911 as article 2872. It is true, as contended by appellants, that some of the school property within the limits of the city of Gonzales had been acquired prior to 1905. When the city of Gonzales assumed control of the schools within its limits, it did so subject to the laws then existing, and agreed that the legal title to all school property would be in the mayor, and could not be conveyed except with the consent of the board of education, and that the beneficial ownership would be in the public for free school purposes. The power to sell could only be exercised for the purpose of investing in more convenient and desirable school property. The authority to decide upon and authorize a sale was vested in the council or board of aldermen, subject to approval by the state board of education. This created a peculiar situation, for the board of trustees was undoubtedly in a better position to decide such questions than the city council, and yet it had no authority to do so. The public in whom the beneficial ownership was vested, and which could not be deprived thereof except to acquire more convenient and desirable property in lieu thereof, was served by two agencies—one consisting of the board

of trustees, which had the exclusive control and management of the schools, and the city council, which had the power of deciding whether school property should be sold for the purpose of acquiring other property. Neither of these agencies held the legal title to the property. In 1905 the Legislature, by the adoption of article 2872 (R. S. 1911), vested the legal title in the board of trustees, constituting the same a body corporate; and by article 2873 empowered the board of trustees to sell the property instead of the city council, and authorized the president of the board of trustees to make the deed instead of the mayor. Appellants contend that such legislation, if given the effect of divesting the title of the city of Gonzales to property, is unconstitutional and subject to the same objection they urge against the special act creating the Gonzales Independent School District. The contention is without merit. The city of Gonzales, by assuming control of the schools, divested itself, in accordance with law, of the beneficial ownership of all school property then possessed or thereafter acquired, and neither the act of 1905 nor the special law under consideration made any change in the beneficial ownership. The Legislature did change the agency which was to hold the legal title, and decide whether it was advisable to sell for reinvestment in more desirable property. The property became public property by the voluntary act of the city, and the Legislature in providing the changes above mentioned did not infringe upon the proprietary or private rights of the city.

[3] A city has no vested rights in powers conferred upon it or its officers for civil, political, or administrative purposes. Dillon on Municipal Corporations (5th Ed.) §§ 105, 98; Laramie County v. Albany County, 92 U. S. (Otto) 307, 23 L. Ed. 552. Appellants, as citizens of the city of Gonzales, are not deprived of any rights by the changes made in the designation of the holder of the naked legal title, or of the local agency which is to determine the policy with regard to sales and reinvestments, and certainly it cannot be contended that by enlarging the boundaries of the former district appellants have been deprived of any rights.

[4] Under our laws, a city which has assumed the control of the public schools within its limits undertakes to dedicate to the use of the public the property it then owns which is being used for school purposes as well as all property thereafter acquired for such purposes. As soon as it acquires property for such purposes it parts with the beneficial ownership, and cannot reacquire any private rights therein. But if it votes a bond issue to erect a school building, it owns the fund derived from the sale of the bonds, and has the exclusive control thereof. Hamilton v. Bowers, 146 S. W. 629. The city of Gonzales could not have been compelled by the new district to expend any funds on hand at the time the new district was created, but, having made a contract for the erection of a school building, it complied therewith, although such compliance involved the payment of money which it was no longer legally obliged to expend for the benefit of public schools.

[5] Appellants contend that, of the $17,757.83 found by the court to have been paid by the city for the benefit of the public schools after the passage of the special act, the sum of $4,757.83 was in payment of obligations of the city for the construction of buildings under contracts made prior to the passage of the special act, and contends that the court erred in concluding as a matter of law that the school district, of which the district created by the special act is the successor, owed no debts. Appellants contend, further, that the provision of the special act that "all contracts, obligations and outstanding indebtedness of the Gonzales public schools, shall be binding on the Gonzales Independent School District," is in violation of section 7, art. 3, of the Constitution.

While it is true, as found by the court, that the school corporation, as distinguished from the city corporation, owed no debts, it is not clear that the special act referred to debts of the school corporation. The language is broad enough to cover, and was probably intended to cover, the obligations of the city with respect to the uncompleted buildings. It is of course proper that such funds as the city paid out pursuant to its contracts, after its obligation to the public to do so ceased, should be repaid by the beneficiary of such payments, and a provision to that effect was eminently proper unless prohibited by the Constitution.

We find no provision in the Constitution which directly restricts the Legislature from imposing burdens upon inhabitants of the new district which rested upon inhabitants of the old district; but the amendment to section 3 of article 7, which authorizes the imposition of taxes by vote of the taxpayers of school districts, and which is held to be the only grant of power of that nature as to districts other than cities and towns which have assumed control of their schools, restricts the purposes for which taxes may be levied to "the further maintenance of public free schools and the erection and equipment of school buildings therein."

We are unable to deduce from such provision an implied prohibition against placing financial burdens upon a district otherwise than by a vote of the taxpayers thereof. At most, it can only be held to impliedly prohibit the use of funds raised by taxation for purposes other than "the further maintenance of public free schools and the erection and equipment of school buildings." Now, it may be conceded that the payment of the debt to the city, hereinbefore described, could not be made out of funds raised by local taxation,

but the Legislature would doubtless have the power to provide that revenue derived from other sources could be used for such purpose. In the act under consideration the Legislature did not undertake to authorize a tax levy to pay the obligations placed upon the new district, and we are not confronted with a case in which the use of money derived from local taxes for that purpose is sought to be enjoined. We conclude that the provision making obligations of the Gonzales public schools binding on the new district is not in violation of section 3, art. 7, of the Constitution.

[6] It is contended that the special act authorizes the levy of taxes in excess of the constitutional limit for the character of district created by the act, namely, 50 cents on the $100 valuation of property. The act authorizes a maintenance tax of not exceeding 50 cents, and a tax for sites and buildings not to exceed 25 cents, but also provides that both together shall never exceed 50 cents on the $100 valuation. The language is almost identical with that used in article 2857, R. S. 1911, with regard to independent districts, and upon its face constitutes a general grant of power to vote taxes not exceeding 50 cents on the $100 valuation of property. If appellants are correct in saying that the city was still legally required to collect 35 cents for maintenance of schools and 17 cents for school bonds, and the Legislature be charged with knowledge of such fact, we might say that surely the Legislature expected the new district to levy some taxes, and therefore intended a grant of power to levy 50 cents regardless of what the city was required to do. But it is so clear that the city by the passage of the special act is deprived of the power to collect taxes for maintenance of the schools taken from its control that the maintenance tax of 35 cents cannot be taken into consideration in arriving at the intention of the Legislature. However, the city was required to continue its tax levy to pay bonds voted for school buildings, which was 17 cents. If it be conceded that this tax must be considered in complying with the Constitution, there being a margin of 33 cents to start on, the Legislature might have deemed the 33 cents in the vastly increased district ample, and therefore no intention to authorize 50 cents in addition to the 17 cents can be imputed to it.

[7] If the language used is susceptible to two constructions, the one making it constitutional must be adopted in preference to the one which would render it unconstitutional. We conclude that the Legislature merely made a general grant of power, which was to be exercised by the district in view of conditions existing at the time of its exercise, and was at all times to be exercised subject to the constitutional limit provided for districts of the kind created by the special

act. Having held the act valid as against all the objections urged thereto by appellants, it follows that the tax of 30 cents on the $100 valuation of property in the district sued for by plaintiff was a valid tax, and that part of the judgment relating thereto must be affirmed.

There remains to be disposed of the question whether defendants are entitled to enjoin the levy and collection of taxes by the district in a sum which, added to the taxes for school purposes legally collectible by the city, would exceed 50 cents on the $100 valuation of property. This question is fairly raised by the cross-action and defendants' prayer, as will be shown by the statement of the case made in the beginning of this opinion. While it is true that the property described in plaintiff's petition lies outside the city, the defendants allege that they own property subject to taxation within the limits of the city, and, as the tax must be uniform throughout the district, we conclude that the pleadings fairly raise the issue whether the taxes for the years 1915 and 1916 of 40 cents on the $100 valuation of property are in excess of the constitutional limit, and that it must be admitted that such excess exists if the 17 cents levied by the city is required by law to be considered as a tax for school purposes upon any of the property within the new district. Appellees contend that the city levies its tax under authority conferred by section 9, art. 8, of the Constitution, while the new district derives its power from section 3, art. 7; also, in effect, that the new district is the successor of a different corporation from the city, namely, the school corporation; that, therefore, the city's tax cannot be considered in determining the amount which can be levied by the new district any more than the amount levied by the new district can be considered in determining whether the city levy is excessive. The city was the instrumentality provided for the levy and collection of school taxes, and, as the law looks to the substance, the intervention of a school corporation which expended maintenance taxes cannot be held to affect the question. If a common school district or an independent school district with an outstanding bond issue had been included in the new district instead of the city, it is clear that the amount of taxes necessarily levied for the bonds would have to be deducted in determining the amount the new district could levy. Love v. Rockwall County, 194 S. W. 659. The city derives its power to issue bonds to erect school buildings from legislation based upon section 9 of article 8 of the Constitution, which authorizes cities to levy a tax of not exceeding 25 cents for public buildings and improvements. Does the fact that the tax is levied under a grant of power not specifying schools alter the fact that the bonds were voted and the tax levied for

the purpose of erecting school buildings, and that, if the city had not been made the instrumentality for securing an efficient school system, no such bonds would have been voted or taxes levied? Surely not. We believe that when we look to the substance it must be held that the taxpayers owning property within the city are still paying 17 cents for public school purposes, and that they cannot be made to pay more than 50 cents in all, since the Legislature has seen fit to place their property in a district which under the Constitution is limited to a 50 cent tax. We therefore conclude that the tax levies for the years 1915 and 1916 are excessive to the extent of 7 cents.

[8] While there are statements in the court's conclusions of law to the effect that the cross-action was deemed subject to general demurrer, no order or judgment sustaining a general demurrer appears in the record. The judgment of the court does not specifically dispose of the cross-action, but, under recent authorities, we conclude that it is a final judgment, and that it must be construed as denying appellants any relief on their cross-action. Hermann v. Allen, 103 Tex. 385, 128 S. W. 115; Trammell v. Rosen, 106 Tex. 132, 157 S. W. 1161; Swan v. Price, 162 S. W. 994; Pitt v. Gilbert, 190 S. W. 1157.

The judgment in favor of plaintiff for the taxes of 1914, and for foreclosure of lien securing the payment thereof, is affirmed, the judgment denying defendants any relief on their cross-action is reversed, and judgment rendered that an injunction issue against the school district and its board of trustees and agents restraining the collection of any tax for the years 1915 and 1916 in excess of 33 cents on the $100 valuation of property owned by defendants; and, subject to the issuance of such injunction, defendants, within 10 days from the date this judgment is certified to the trial court for observance, pay into the registry of the district court of Gonzales county, for the benefit of plaintiff, the tax of 33 cents on the $100 valuation of property held herein to be legal; and said injunction shall also restrain plaintiff from hereafter levying and collecting any tax in excess of the difference between the constitutional limit of 50 cents and such tax as the city of Gonzales is required by law to levy for the payment of interest on, and the procurement of a sinking fund for the payment of, the bonded indebtedness of said city created for school purposes.

FLY, C. J., entered his disqualification, and did not sit in this case.

### On Motion for Rehearing.

MOURSUND, J. We have given careful consideration to appellants' motion for rehearing, but find no reason for changing our views with regard to the constitutionality of the special law. Many of the questions raised have been decided adversely to appellants' contention in the case of Eagle Lake Independent School District v. Hoyo, 199 S. W. 352. In support of our conclusions with regard to the provisions concerning the assumption of contracts, obligations, and debts, and concerning the power to levy taxes, which provisions are expressed so as to leave room for doubt concerning the intention of the Legislature, we cite the case of Maud, Tax Collector, v. Terrell, State Comptroller (Sup.) 200 S. W. 375, recently decided by the Supreme Court, which furnishes an excellent illustration of the application of the rule that if the terms used in a statute are general, reasonably admitting of a construction which does not condemn it, the language will be restrained in its operation so as to harmonize the statute with the Constitution, though literally it be susceptible of a broader meaning, which would conflict with the Constitution. The appellant's motion for rehearing is overruled.

[9] Appellee insists that we erred in holding that the tax levy for the years 1915 and 1916 in excess of 33 cents on the $100 valuation was invalid, because in excess of the constitutional limit for school districts, and calls our attention to the fact that our holding establishes the 17 cents tax levied by the city as a double limitation upon taxpayers residing within the limits of the city. In other words, that the Constitution guarantees them the right to levy 25 cents for public buildings as taxpayers of the city, and 50 cents for public schools as taxpayers of an independent school district, and that our holding establishes that they can only levy 58 cents for both purposes, thus using the 17 cents as a limitation upon the taxing power both of the city and the new district. We conclude that appellee's contention should be sustained. Articles 924 and 925 designate school buildings in cities which have assumed the control of the public schools as public buildings to be provided out of the tax levied by authority of section 9, art. 8, of the Constitution, and in articles 2877 to 2880, inclusive, provision is made for the levy of taxes for the support of the public free schools in cities which have assumed control of the schools. The statutes under which the 17 cents tax levy was made declare it to be a tax for the erection of public buildings, and unless such statutes are held invalid it follows that the city can only levy 8 cents for the purpose of erecting public buildings as long as it is required to levy said tax of 17 cents. This being the case, we conclude that we erred in holding that said tax was a school tax within the meaning of article 7, § 3, of the Constitution. We therefore conclude that the tax levies made by the new district in 1915 and 1916 were not excessive.

Appellee's motion for rehearing is granted, our former judgment set aside, and judgment entered affirming in all respects the judgment of the trial court.