# THE ATTORNEY GENERAL
## OF TEXAS



Grover Sellers

~~XXXXXXXXXXXXXXX~~

**ATTORNEY GENERAL**

Hon. H. A. Jamison
Commissioner
State Banking Department
Austin, Texas

Opinion No. O-6746
Re: Constitutionality of Section
15, House Bill No. 46, 49th Legis-
lature, pertaining to the regula-
tion of perpetual care cemeteries.

Dear Mr. Jamison:

You ask this Department to advise whether or not the controversial portion of Section 15 of House Bill No. 46 of the 49th Legislature is unconstitutional, and if so, whether or not the unconstitutional portion thereof is severable from the Act. You refer to a brief attached, from which we have no difficulty in isolating the particular problem confronting you.

Article 925 of our Revised Civil Statutes, authorizing the organization of perpetual care cemeteries, contains the following:

"***. The principal of all funds for perpetual care shall forever remain irreducible and inviolable and shall be maintained separate and distinct from all other funds."

Article 925a provides:

"A perpetual care cemetery is one which shall hereafter deposit in its perpetual care fund as provided under the provisions of Article 925, an amount equivalent to a minimum of Twenty (20¢) Cents per square foot of ground of interment right sold or disposed of as perpetual care property for earth interment, until such fund reaches a minimum of One Hundred Thousand Dollars ($100,000.00), and the minimum thereafter shall be Ten (10¢) Cents per square foot; ***."

These quotations are from the amendment of 1934.

Now, Section 15 of House Bill No. 46 of the 49th Legislature reads as follows:

"Each perpetual care cemetery shall deposit in its perpetual care fund an amount equivalent to a minimum of Twenty (20¢) Cents per square foot of ground area sold or disposed of as perpetual care property, after March 15, 1934, together with such amount as was stipulated in any

contracts under which perpetual care property was sold prior to March 15, 1934; ***, such minimum requirement shall apply to all property in which the exclusive right of sepulture has been sold and paid for, whether used for interment purposes or not.  The deposit of such funds in the perpetual care fund shall be made within thirty (30) days after the receipt of the final purchase price of each lot, grave, crypt or niche sold as property entitled to perpetual care.  No cemetery shall hereafter operate as a perpetual care, permanent maintenance, or free care cemetery until the provisions hereof are complied with."

It will be seen that House Bill No. 46 omits the limitation of $100,000.00 provision, and likewise the further provision for a lesser deposit, after such minimum sum has been reached.

Your question is amplified in the brief for the companies, stating:

"It is submitted that as to all perpetual care cemeteries operating under the 1934 law, which have built up their endowment funds to $100,000.00 since the effective date of the 1934 Act and which then as provided by the 1934 Act have reduced their payments into the perpetual care fund to 10¢ per square foot as they are permitted to do by said 1934 Act, the provisions of the last paragraph of Section 15 of H. B. 46, the new 1945 law which compels such cemeteries to go back, dig down into their own funds and pay into their perpetual care funds enough money to equal 20¢ per square foot for each square foot of grave space or ground sold under perpetual care and making it unlawful for such cemeteries to hereafter operate as a perpetual care cemetery, is void as being a retroactive, retrospective and ex post facto law which is prohibited and forbidden by the Constitution of the State of Texas."

Section 16 of Article 1 of the Constitution provides:

"No *** retroactive law, *** shall be made."

This is, of course, the supreme law of the land, but it remains to be seen whether it has any application to the question here presented.

Now, a private corporation is an artificial person, and has no rights whatsoever except those conferred upon it by the creating power.  It exists only by grace of the statute. Its charter does not constitute an irrevocable contract between the corporation and the State for "all charters or amendments to charters, under the provisions of this chapter, shall

be subject to the power of the Legislature to alter, reform or amend the same." (Rev.Civ.Stat.Art. 1318). If the charter itself is not immune from legislative alteration, reformation or amendment, by the same token, and for greater reason a private corporation cannot acquire a fixed or vested right in the continuation of the statutory provisions regulating such corporation. There can be no vested right by anyone in the continuation of a particular statute. The Legislature may not even make a law that is irrepealable by any succeeding Legislature. Judge Cooley has said:

"As the power to grant unamendable and irrepealable charters is one readily susceptible of being greatly abused, to the prejudice of important public interest, and has been greatly abused in the past, the people of a majority of the states, in framing or amending their constitutions, have prudently guarded against it by reserving the right to alter, amend, or repeal all laws that may be passed, conferring corporate powers." (Cooley Const.Lim. (8th Ed.) 566, 568).

While we do not have such a provision in the Constitution itself, nevertheless the statute above quoted has been in existence since 1874, antedating the charters involved in this inquiry.

The establishment or maintenance of a cemetery for the burial of the dead is a quasi public matter in which the State has a peculiar interest, under the police power.

We are not implying that rights may not be acquired by a private corporation, or by persons dealing with a private corporation that are immune from future retroactive legislative interference, and from any other character of legislative impairment, for it is well settled thatsuch vested rights do often exist. At this very point we again quote from Judge Cooley, as follows:

"Perhaps the most interesting question which arises in this discussion is, whether it is competent for the legislature to so bind up its own hands by a grant as to preclude it from exercising for the future any of the essential attributes of sovereignty in regard to any of the subjects within its jurisdiction; whether, for instance, it can agree that it will not exercise the power of taxation, or the police power of the State, or the right of eminent domain, as to certain specified property or persons; and whether, if it shall undertake to do so, the agreement is not void on the general principle that the legislature cannot diminish the power of its successors

by irrepealable legislation, and that any other rule might cripple and eventually destroy the government itself.  If the Legislature has power to do this, it is certainly a very dangerous power, exceedingly liable to abuse, and may possibly come in time to make the constitutional provision in question as prolific of evil as it ever has been, or is likely to be, of good.

"So far as the power of taxation is concerned, it has been so often decided by the Supreme Court of the United States, though not without remonstrance on the part of State courts, that an agreement by a State, for a consideration received or supposed to be received, that certain property, rights, or franchises shall be exempt from taxation, or to be taxed only at a certain agreed rate, is a contract protected by the Constitution, that the question can no longer be considered an open one.  In any case, however, there must be a consideration, so that the State can be supposed to have received a beneficial equivalent; for it is conceded on all sides that, if the exemption is made as a privilege only, it may be revoked at any time. And it is but reasonable that the exemption be construed with strictness."

No citizen has any vested right to have rules of law remain unchanged for his benefit.

Munn v. State of Illinois, (U.S.) 24 Law Ed. 77;
Middleton v. Texas Power & Light Company (U.S.)
    63 Law Ed. 527, affirming 188 S.W. 276;
Alley v. Denson, 8 Tex. 297;
Houston v. Gonzales Ind.Sch.Dist., 202 S.W. 963,
    229 S.W. 467;
Lyford Ind.Sch.Dist. v. Willamar Ind.Sch.Dist.
    34 S.W.(2) 854;
Hunt County v. Rains County, 7 S.W.(2) 648;
Bodeman et al v. First Addition to Rattlesnake
    Drainage District, (Wis.) 221 N.W. 864.

Now, the claimed immunity of the companies arises out of the Act of 1934.  Literally, the Act confers no right on the associations, but rather it imposes a burden upon them with respect to deposits in the perpetual care fund--that is to say, it actually imposes the duty of paying into the fund ten cents per square foot upon burial lots sold.  The right, if any exists, therefore, is in the nature of an implied permit, license, or privilege to carry on their corporate purpose.

It is well settled that the issuing of a permit, or the granting of a license, upon compliance by the holder with

existing legal requirements, does not of itself create a vested right immune against further legislative regulation and requirement, in pursuance of the police power of the sovereign.

Tennessee Electric Power Co. v. Tennessee Valley
   Authority (U.S.) 83 Law Ed. 543;
U. S. ex rel Kerr v. Ross, 5 App. D.C. 241;
Home Indemnity Company of New York v. O'Brien,
   104 Fed. (2) 413;
Geneva Inv. Co. v. City of St. Louis, 87 Fed.
   (2) 83; Cer.Den. (U.S.) 81 Law Ed. 1348;
State v. Clark, 187 S.W. 760;
Peters v. City of San Antonio, 195 S.W. 989.

Neither the liquor dealer, the lawyer, the doctor, nor any other citizen has the vested right to continue his business authorized by and conducted in compliance with an existing law as against the superior right of the State, in the exercise of its police power, to repeal or amend that law, and add other burdensome requirements. This is but the exercise of a legitimate governmental function, and is in no sense the interference with vested proper rights, within the meaning of the Constitution. They are merely legal rights, under existing law, exercised with the notice that such existing law may be repealed or amended at any time, and the legal right itself taken away or charged with additional burdens at the will of any Legislature.

Now, one may acquire a vested right by the payment of a consideration under a franchise or similar contract, but that principle does not help the associations here, for they paid no consideration whatever for the claimed exemptions; they have their money in the endowment fund, as part of their capital assets.

In its last analysis, the 1945 Act is but the legitimate requirement of such companies that they create and maintain an endowment fund of adequate size.

From what we have said it follows that the advice is that there is no constitutional invalidity in Section 15 of House Bill 46 of the 49th Legislature.

APPROVED AUG 9, 1945          Very truly yours
/s/ Carlos C. Ashley          ATTORNEY GENERAL OF TEXAS
FIRST ASSISTANT               By /s/ Ocie Speer
ATTORNEY GENERAL              Ocie Speer, Assistant
APPROVED: OPINION COMMITTEE
BY:        BWB, CHAIRMAN
OS:MR:wb